UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X  Docket#
UNITED STATES OF AMERICA,      : 15-cr-00348-ERK-6
                               :
      - versus -               : U.S. Courthouse
                               : Brooklyn, New York
RENDON-REYES, et al.,          :
              Defendants       : April 18, 2017
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

**For the Government:**          **Bridge M. Rohde, Esq.**
                                 United States Attorney

                         BY:     **Margaret Lee, Esq.**
                                 **Taryn Merkl, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York  11201

**For Defendants:**
**Felix Rojas:**                 **Donna R. Newman, Esq.**
                                 Law Office of
                                 Donna R. Newman
                                 20 Vesey Street, Suite 400
                                 New York, NY 10007

**Severiano Martinez-Rojas:**    **John S. Wallenstein, Esq.**
                                 1100 Franklin Avenue
                                 Suite 100
                                 Garden City, NY 11530

**Transcription Service:**       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Ave.
                                 West Islip, New York 11795
                                 laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Criminal Cause for a Change of Plea

2    Hearing, case number 15-cr-348, United States v.

3    Severiano Martinez-Rojas and Felix Rojas.

4          Spanish Interpreter, Rosa Olivera, previously

5    sworn, present.

6    (INTERPRETER PREVIOUSLY SWORN)

7          THE CLERK:  Counsel, can you please state your

8    name for the record.

9          MS. MERKL:  Taryn Merkl and Maggie Lee for the

10   United States.

11         Good afternoon, your Honor.

12         THE COURT:  Good afternoon.

13         MS. NEWMAN:  Donna R. Newman on behalf of Mr.

14   Rojas.

15         THE COURT:  Is the mic working?

16         MS. NEWMAN:  Sorry.

17         THE COURT:  Yeah, there you go.

18         MS. NEWMAN:  Is that better?  Okay.

19         THE COURT:  Much better, thanks.

20         MS. NEWMAN:  Let me say that again, so that

21   it's clear.

22         Donna R. Newman on behalf of Felix Rojas, who

23   is seated next to me, your Honor.

24         THE COURT:  Okay.  Good afternoon.

25

3

Proceedings

1              MR. WALLENSTEIN:  And John Wallenstein for

2    Severiano Martinez-Rojas, who is to my right, Judge.

3              THE COURT:  All right.  Good afternoon.

4              And the Spanish Interpreters -- Spanish

5    Interpreter, sorry.

6              THE INTERPRETER:  There are two of us.

7              THE COURT:  There are two of you.  So how are

8    we -- all right.

9              THE INTERPRETER:  Rosa Olivera.

10             THE INTERPRETER:  I'm James Santoria (ph.).

11             THE COURT:  All right.  Good afternoon.

12             THE INTERPRETER:  Good afternoon.

13             THE COURT:  Logistically, is this going to

14   work?  Each of the -- everybody needs to be able to speak

15   into a microphone, so I don't know if it -- will it be

16   you, Ms. Newman and the -- are you alternating or how are

17   you doing it?

18             THE INTERPRETER:  Yes, ma'am, we're

19   alternating.

20             THE COURT:  All right.  Well, let's try it but

21   just if you're close to a microphone, that would be

22   helpful.

23             So for each defendant, I have the consent to

24   have a plea taken before me, for each of them, I have a

25   plea agreement that have been marked, Mr. Felix Rojas'

4

Proceedings

1  plea agreement as Government's Exhibit 4 and Mr.

2  Martinez-Rojas' plea agreement as Government's Exhibit 5.

3          I have a copy of the indictment.  It's the

4  superseding indictment in this case in the Eastern

5  District, as well as a copy of the first superseding

6  indictment which was filed in the Northern District of

7  Georgia in a case called United States of America v.

8  Arturo Rojas-Coyoto (ph.).

9          I also have from the United States, a

10  description of the statement of the statutes and

11  essential elements of the statutes that apply in this

12  case.  All right.  So does everybody have a copy of those

13  documents as you need it for your respective client?

14          MR. WALLENSTEIN:  Judge, do you have a copy of

15  the Rule 20 transfer?  Did I miss that?

16          MS. MERKL:  She does not but I can provide a

17  copy.

18          THE COURT:  Okay.  Thanks. All right.  And for

19  Mr. Martinez-Rojas, I have this consent to transfer case

20  for plea and sentence.  All right.  So we'll go over that

21  in a minute.

22          Is there any other paper that I should have?

23  For the government, anything else?

24          MS. MERKL:  No, your Honor.

25          THE COURT:  And for any of the defendants?

5

Proceedings

1          MS. NEWMAN:  No, your Honor.

2          MR. WALLENSTEIN:  No, your Honor.

3          THE COURT:  All right.  So for the government,

4  are there any victims of the offense and if so, has the

5  government fulfilled its obligations to notify them of

6  today's hearing and the right to attend the hearing?

7          MS. MERKL:  There are victims of this case,

8  your Honor, and yes our victim specialists have notified

9  the victims.

10          THE COURT:  And do you know if they have any

11  intent to come here today?

12          MS. MERKL:  It is our understanding that they

13  do not.

14          THE COURT:  Okay.  Do you have any knowledge if

15  they're going to participate in these proceedings as they

16  go forward?

17          MS. MERKL:  My understanding, your Honor, is

18  that some of the victims intend to participate at the

19  time of sentence.

20          THE COURT:  Okay.

21          THE INTERPRETER:  The interpreter requests that

22  the government attorney speaks up because the interpreter

23  cannot hear.

24          THE COURT:  Okay.  So why don't you move the

25  microphone closer to you.  Is the other one not working?

6

Proceedings

1          THE CLERK:   They both work.

2          THE COURT:  All right.  So you could each have

3   your own.

4          MS. MERKL:  It's the government's understanding

5   that the victims intend to participate at the time of

6   sentence.

7          THE COURT:  All right.  So for each of the

8   defendants, I am going to ask my deputy, Ms. Quinlan, to

9   administer an oath to you.

10  S E V E R I A N O   M A R T I N E Z - R O J A S ,

11      called as a witness, having been first duly sworn,

12      was examined and testified as follows:

13  F E L I X   R O J A S ,

14      called as a witness, having been first duly sworn,

15      was examined and testified as follows:

16          THE COURT:  All right.  So I will explain in a

17  little more detail as we go along but just so each of the

18  defendants knows, much of the information that I am going

19  to give you here today is the same for each of your

20  respective cases and many of the questions that I am

21  going to ask you are the same.

22          So at times I'll ask a question and ask each of

23  you to answer in turn.  There will be times where the

24  question I am asking you or the information I am giving

25  you is specific to your respective case.  So if at any

7

Proceedings

1   time what I am saying is confusing and you need

2   clarification, you can speak with your lawyer or you can

3   ask me directly and I'll clarify what I have said.

4            All right.  So as you may know, this case has

5   been assigned to a district judge in this court, that's

6   Judge Korman.  Judge Korman is the judge who will make

7   the ultimate decision as to whether to accept your guilty

8   plea and if he does, to sentence you.

9            So you have the absolute right to have the

10  district judge, Judge Korman, listen to your plea without

11  any prejudice to you.

12           Do you understand?  So let's start first, Mr.

13  Felix Rojas.

14           DEFENDANT F. ROJAS:  Yes.

15           THE COURT:  And Mr. Martinez-Rojas?

16           DEFENDANT MARTINEZ-ROJAS:  Yes.

17           THE COURT:  All right.  As you heard me

18  earlier, I asked you and everyone else to use the

19  microphones as you're giving me the answer.  The reason

20  we're doing that is because we're making a recording of

21  today's proceeding.  A transcript of the proceeding will

22  be prepared by a court reporter and provided to the

23  district judge, Judge Korman.

24           Judge Korman will review the transcript of

25  today's proceeding in connection with deciding whether to

8

Proceedings

1   accept your plea and if he does, with your sentence.  I

2   know I asked everyone to use the microphone.  For most of

3   you -- actually, the person we need the response on the

4   microphone for is the translator's English translation of

5   your answer.  So I am going to ask her to use the

6   microphone when she is providing information to me.

7           All right.  So as I said, Judge Korman will

8   read the transcript of today's proceeding and in

9   connection with deciding whether to accept your plea and

10  if he does, with your sentence.

11          So do you understand that?  First, Mr. Felix

12  Rojas?  Do you understand?

13          DEFENDANT F. ROJAS:  Yes, ma'am.

14          THE COURT:  And Mr. Martinez-Rojas?

15          DEFENDANT MARTINEZ-ROJAS:  Yes.

16          THE COURT:  All right.  As for each of you, do

17  you wish to give up your right to have the district judge

18  listen to your plea and instead proceed here before me

19  here today?

20          DEFENDANT F. ROJAS:  Yes.

21          DEFENDANT MARTINEZ-ROJAS:  Yes.

22          THE COURT:  All right.  That was from Mr. F.

23  Rojas and then Mr. Martinez-Rojas.

24          In connection with your exercise of that right,

25  I have a form here that indicates that you've consented

9

                              Proceedings

1   to me, a magistrate judge, to hear your plea.  So I am

2   holding up the copy of the form for Mr. Felix Rojas.  For

3   each of you, was this form translated for you from

4   English to Spanish?

5              DEFENDANT F. ROJAS:  Yes, your Honor.

6              THE COURT:  All right.

7              DEFENDANT MARTINEZ-ROJAS:  Yes, your Honor.

8              THE COURT:  So I am not sure I made it clear.

9   Each of the defendants, you actually don't need to use

10  the microphones when you're answering in Spanish.  It's

11  the interpreter who needs to be able to be closer to the

12  microphone.

13             All right.  So for each of you, do you

14  understand what this form says?

15             DEFENDANT F. ROJAS:  Yes.

16             THE COURT:  And then Mr. Martinez-Rojas, do you

17  understand?

18             DEFENDANT MARTINEZ-ROJAS:  Yes.

19             THE COURT:  Did you review this form with your

20  attorney?

21             DEFENDANT F. ROJAS:  Yes.

22             DEFENDANT MARTINEZ-ROJAS:  Yes.

23             THE COURT:  All right.  And are each of you in

24  agreement with what it says on your respective forms?  So

25  first Mr. Rojas?

10

Proceedings

1          DEFENDANT F. ROJAS:  Yes, yes.

2          THE COURT:  And Mr. Martinez-Rojas?

3          DEFENDANT MARTINEZ-ROJAS:  Yes.

4          THE COURT:  All right.  So I am holding up the

5    copy that's Mr. Felix Rojas' form and pointing to the

6    first signature on the page.

7               Is that your signature, Mr. Rojas?  Can you see

8    it?

9          DEFENDANT F. ROJAS:  Yes.

10         THE COURT:  All right.  Ms. Newman below that,

11   is that your signature?

12         MS. NEWMAN:  Yes, it is.

13         THE COURT:  For the government, is that Ms. Lee

14   or Ms. Merkl, I am not sure.

15         MS. MERKL:  It's my signature, your Honor.

16         THE COURT:  All right.  And then for Mr.

17   Martinez-Rojas, pointing to this signature here on the

18   page, is that your signature?

19         DEFENDANT MARTINEZ-ROJAS:  Yes.

20         THE COURT:  And then Mr. Wallenstein, is that

21   your signature below?

22         DEFENDANT MARTINEZ-ROJAS:  It is, your Honor.

23         THE COURT:  And then, Ms. Merkl, below that, is

24   that your signature?

25         MS. MERKL:  It is.  Thank you very much, your

11

                              Proceedings
1    Honor.
2              THE COURT:  All right.  For each of the
3    defendants, did you give your consent to proceed here
4    before me today voluntarily and of your own free will?
5    Mr. Rojas?
6              DEFENDANT F. ROJAS:  Yes.
7              DEFENDANT MARTINEZ-ROJAS:  Yes, yes.
8              THE COURT:  All right.  So that was answer from
9    each defendant.
10             And has anyone made any threats or promises to
11   you to get you to proceed before me here today?
12             DEFENDANT F. ROJAS:  No.
13             DEFENDANT MARTINEZ-ROJAS:  No.
14             THE COURT:  All right.  Each of the defendants
15   said no.
16             All right.  Additionally, for Mr. Martinez-
17   Rojas, there's an additional form with regard to this
18   case and this is the form that says you consent to
19   transfer of the case, United States of America v.
20   Severiano Martinez-Rojas for a plea and sentence.  This
21   is the case that was in the Northern District or is in
22   the Northern District of Georgia in the Atlanta Division.
23             So I am holding up my copy of the form.  Have
24   you seen this form?
25             DEFENDANT MARTINEZ-ROJAS:  Yes.

12

Proceedings

1          THE COURT:  And was it translated for you from
2    English to Spanish?
3          DEFENDANT MARTINEZ-ROJAS:  Yes.
4          THE COURT:  And do you understand this form?
5          DEFENDANT MARTINEZ-ROJAS:  Yes.
6          THE COURT:  And did you have a sufficient
7    opportunity to review it with your attorney?
8          DEFENDANT MARTINEZ-ROJAS:  Yes.
9          THE COURT:  All right.  I am going to point to
10   the first signature.  Is that your signature?
11         DEFENDANT MARTINEZ-ROJAS:  Yes.
12         THE COURT:  All right.  Then Mr. Wallenstein,
13   the third signature, is that yours?
14         MR. WALLENSTEIN:  It is, your Honor, and the
15   second signature on the witness line is that of Jose
16   Carlos Venato (ph.), who is a certified court
17   interpreter.  He translated this document to Mr.
18   Martinez-Rojas at MDC and he signed it at that time and
19   we reviewed it together.
20         THE COURT:  Okay.  All right.  There's a
21   signature for the Assistant United States Attorney from
22   Georgia and then I am going to hold this up for the
23   government.  So is that Ms. Rhode, the Acting U.S.
24   Attorney's signature?
25         MS. MERKL:  It is, your Honor.

13

Proceedings

1          THE COURT:  Okay.  All right.  So we're going

2    to proceed with this case with regard to the plea and

3    sentence here in this Court.

4          So for each of the defendants, as we go along

5    today, I am going to ask you a number of questions in

6    order to assure myself and in turn, the district judge,

7    that your plea is in fact a valid plea.

8          So as I said earlier, if you don't understand

9    any of my questions, you can ask your attorney or you can

10   let me know directly and I will try to clarify what I

11   have said.

12         So for each of the defendants, do you

13   understand that you have the right to be represented by

14   an attorney at trial and at every other stage of the

15   criminal proceedings including this one?

16         Mr. Rojas?

17         DEFENDANT F. ROJAS:  Yes.

18         THE COURT:  And Mr. Martinez-Rojas?

19         DEFENDANT MARTINEZ-ROJAS:  Yes.

20         THE COURT:  And each of you, do you understand

21   that if you cannot afford an attorney, the Court would

22   appoint an attorney for you?

23         Mr. Rojas?

24         DEFENDANT F. ROJAS:  Yes.

25         THE COURT:  And Mr. Martinez-Rojas?

14

Proceedings

1            DEFENDANT MARTINEZ-ROJAS:  Yes.

2            THE COURT:  All right.  Ms. Newman, are you

3    appointed counsel?

4            MS. NEWMAN:  Yes, I am.

5            THE COURT:  And Mr. Wallenstein, are you

6    appointed counsel?

7            MR. WALLENSTEIN:  Yes, ma'am, I am.

8            THE COURT:  All right.  For each of the

9    defendants, if at any time you would like to speak with

10   your respective attorney -- so, Mr. Rojas, it's Ms.

11   Newman or Mr. Martinez-Rojas, Mr. Wallenstein, please let

12   me know and I will let you do so.

13            Do you understand?

14            DEFENDANT F. ROJAS:  Yes.  Yes.

15            THE COURT:  And Mr. Martinez-Rojas?

16            DEFENDANT MARTINEZ-ROJAS:  Yes.

17            THE COURT:  All right.  I am going to remind

18   you that earlier in today's proceeding, Ms. Quinlan

19   administered an oath to you.  And in that oath you swore

20   to tell the truth.  So that means that if you answer any

21   of my questions falsely, those answers may later be used

22   against you in a separate prosecution by the U.S.

23   government for the crimes of perjury or of making a false

24   statement.

25            Do you understand that?  Mr. Rojas?

15

Proceedings

1          DEFENDANT F. ROJAS:  Yes.

2          THE COURT:  And Mr. Martinez-Rojas?

3          DEFENDANT MARTINEZ-ROJAS:  Yes.

4          THE COURT:  All right.  So now we're at a stage

5    where I'm going to ask you some background information.

6    What I am going to do is go through the questions first

7    with Mr. Felix Rojas and  then I am going to ask Mr.

8    Martinez-Rojas the same questions.

9          So, Mr. Felix Rojas, for the record, what is

10   your full name?

11         DEFENDANT F. ROJAS:  Felix Rojas.

12         THE COURT:  And how old are you?

13         DEFENDANT F. ROJAS:  47.

14         THE COURT:  And what's the highest level of

15   education that you have achieved?

16         DEFENDANT F. ROJAS:  Secondary school.

17         THE COURT:  All right.  Is that high school?

18         DEFENDANT F. ROJAS: Yes.

19         THE COURT:  And how old were you when you

20   finished school?

21         DEFENDANT F. ROJAS:  Fifteen.

22         THE COURT:  And where did you finish school?

23         DEFENDANT F. ROJAS:  In San Miguel Tenancingo

24   Tlaxcala, Mexico.

25         THE COURT:  Okay.  And what was the name of the

16

Proceedings

1   school?

2           DEFENDANT F. ROJAS:  Benito Juarez.

3           THE COURT:  All right.  And since you were

4   fifteen, have you had any formal education?

5           DEFENDANT F. ROJAS:  No.

6           THE COURT:  All right.  Are you presently or

7   have you recently been under the care of a doctor?

8           DEFENDANT F. ROJAS:  No.

9           THE COURT:  Are you presently or have you

10  recently been under the care of any mental health

11  professional such as a psychologist, psychiatrist, social

12  worker?

13          DEFENDANT F. ROJAS:  No.

14          THE COURT:  Have you ever been hospitalized or

15  treated for any mental illness?

16          DEFENDANT F. ROJAS:  None.

17          THE COURT:  Have you ever been hospitalized or

18  treated for any addiction to drugs or alcohol?

19          DEFENDANT F. ROJAS:  No, no.

20          THE COURT:  In the past 24 hours, have you

21  consumed any alcohol?

22          DEFENDANT F. ROJAS:  No.

23          THE COURT:  In the past 24 hours, have you

24  consumed any narcotic drugs?

25          DEFENDANT F. ROJAS:  No.

17

Proceedings

1        DEFENDANT F. ROJAS:  No.

2        THE COURT:  In the past 24 hours, have you

3   taken any medications?

4        DEFENDANT F. ROJAS:  No.

5        THE COURT:  Is your mind clear as you sit here

6   today?

7        DEFENDANT F. ROJAS:  Yes.

8        THE COURT:  Do you understand these

9   proceedings?

10        DEFENDANT F. ROJAS:  Yes.

11        THE COURT:  All right.  I am going to now ask

12   the same questions for Mr. Martinez Rojas.

13        For the record, what's your full name?

14        DEFENDANT MARTINEZ-ROJAS:  Severiano Martinez-

15   Rojas.

16        THE COURT:  And how old are you?

17        DEFENDANT F. ROJAS:  52.

18        THE COURT:  What's the highest level of

19   education that you've completed?

20        DEFENDANT MARTINEZ-ROJAS:  Elementary school.

21        THE COURT:  And how hold were you when you

22   finished school?

23        DEFENDANT MARTINEZ-ROJAS:  Thirteen.

24        THE COURT:  And where did you go to school?

25        DEFENDANT MARTINEZ-ROJAS:  In San Miguel

18

Proceedings

1    Tenancingo Tlaxcala.

2           THE COURT:  And that's in Mexico?

3           DEFENDANT MARTINEZ-ROJAS:  Mexico, yes.

4           THE COURT:  And what was the name of the

5    school?

6           DEFENDANT MARTINEZ-ROJAS:  Escuela Benito

7    Juarez (ph.).

8           THE COURT:  Okay.  And since you were thirteen,

9    have you had any formal education?

10          DEFENDANT MARTINEZ-ROJAS:  No.

11          THE COURT:  All right.  Are you presently or

12   have you recently been under the care of a doctor?

13          DEFENDANT MARTINEZ-ROJAS:  No.

14          THE COURT:  Are you presently or have you

15   recently been under the care of any mental health

16   professional, such as a psychiatrist, psychologist or

17   social worker?

18          DEFENDANT MARTINEZ-ROJAS:  No.

19          THE COURT:  Have you ever been hospitalized or

20   treated for a mental illness?

21          DEFENDANT MARTINEZ-ROJAS:  No.

22          THE COURT:  Have you ever been hospitalized or

23   treated for an addiction to drugs or alcohol?

24          DEFENDANT MARTINEZ-ROJAS:  No.

25          THE COURT:  In the past 24 hours, have you

19
Proceedings

1   consumed any alcohol?

2          DEFENDANT MARTINEZ-ROJAS:  No.

3          THE COURT:  In the past 24 hours, have you

4   consumed any narcotic drugs?

5          DEFENDANT MARTINEZ-ROJAS:  No.

6          THE COURT:  And in the past 24 hours, have you

7   consumed any medications?

8          DEFENDANT MARTINEZ-ROJAS:  No.

9          THE COURT:  Is your mind clear as you sit here

10  today?

11         DEFENDANT MARTINEZ-ROJAS:  Yes.

12         THE COURT:  And do you understand these

13  proceedings?

14         DEFENDANT MARTINEZ-ROJAS:  Yes.

15         THE COURT:  All right.  I am going ask your

16  lawyers a few questions.

17         So with regard to Ms. Newman, Mr. Martinez-

18  Rojas, have you discussed this matter with your client?

19         MS. NEWMAN:  Yes, I have.

20         THE COURT:  All right.  Do you speak Spanish or

21  have you had the assistance of an interpreter?

22         MS. NEWMAN:  Had the assistance of an

23  interpreter.

24         THE COURT:  And have you had any difficulty

25  communicating with your client?

20

Proceedings

1          MS. NEWMAN:  No.

2          THE COURT:  In your opinion, is Mr. Rojas

3    capable of understanding these proceedings?

4          MS. NEWMAN:  Yes.

5          THE COURT:  And in your opinion, does he

6    understand the rights he'll be waiving if he decides to

7    go ahead with his guilty plea?

8          MS. NEWMAN:  Yes.

9          THE COURT:  And do you have any doubt as to his

10   competence to plead at this time?

11         MS. NEWMAN:  No, I do not.

12         THE COURT:  Did you discussed with him the

13   possible sentence and consequences of his guilty plea?

14         MS. NEWMAN:  Yes, I  have.

15         THE COURT:  Did you discuss with him the

16   operation of sentencing guidelines?

17         MS. NEWMAN:  Yes, I have.

18         THE COURT:  All right.  And did you discuss

19   with him the minimum terms of imprisonment?

20         MS. NEWMAN:  Yes.

21         THE COURT:  Okay.  All right.

22         And Mr. Wallenstein, with regard to your

23   client, Mr. Martinez-Rojas, I am going to ask you the

24   same questions.  Have you discussed this matter with your

25   client?

21

Proceedings

1          MR. WALLENSTEIN:  Yes, I have.

2          THE COURT:  Do you speak Spanish or have you

3    had the assistance of an interpreter?

4          MR. WALLENSTEIN:  I had the assistance of a

5    certified interpreter on each occasion when we met.

6          THE COURT:  All right.  And have you had any

7    difficulty communicating with your client?

8          MR. WALLENSTEIN:  No.

9          THE COURT:  In your opinion, is Mr. Martinez-

10   Rojas capable of understanding the nature of these

11   proceedings?

12         MR. WALLENSTEIN:  Absolutely.

13         THE COURT:  In your opinion, does he understand

14   the rights he will be waiving if he decides to go ahead

15   with his guilty plea?

16         MR. WALLENSTEIN:  He does and I have explained

17   them to him thoroughly.

18         THE COURT:  And in your opinion -- well, do you

19   have any doubt as to his competence to plead at this

20   time?

21         MR. WALLENSTEIN:  No.

22         THE COURT:  And I am going to ask you, although

23   I believe you touched on this answer anyway, have you

24   explained to him the possible sentencing consequences of

25   a guilty plea?

22

Proceedings

1          MR. WALLENSTEIN:  Yes, I have.

2          THE COURT:  Have you discussed with him the

3    operation of the sentencing guidelines?

4          MR. WALLENSTEIN:  Yes, I have.

5          THE COURT:  Have you discussed with him the

6    mandatory minimum sentence that the Court must impose?

7          MR. WALLENSTEIN:  I have.

8          THE COURT:  All right. Coming back to each of

9    the defendants, I am going to ask you some other

10   questions.

11          So each of you, have you had a sufficient

12   opportunity to discuss your case with your attorney?  So

13   for Mr. Rojas?

14          DEFENDANT F. ROJAS:  Yes.

15          THE COURT:  And Mr. Martinez-Rojas?

16          DEFENDANT MARTINEZ-ROJAS:  Yes.

17          THE COURT:  And have you had in each of the

18   opportunities when you spoke with your attorney, have you

19   had the assistance of a Spanish language interpreter?

20          Mr. Rojas?

21          DEFENDANT F. ROJAS:  Yes.

22          THE COURT:  Mr. Martinez-Rojas?

23          DEFENDANT MARTINEZ-ROJAS:  Yes.

24          THE COURT:  Have you had any difficulty

25   communicating with your attorneys?

23

Proceedings

1          DEFENDANT F. ROJAS:  No.

2          DEFENDANT MARTINEZ-ROJAS:  No.

3          THE COURT:  Each of you, are you fully

4    satisfied with the representation and advice given to you

5    in this case by your attorney?

6          DEFENDANT F. ROJAS:  Yes.

7          DEFENDANT MARTINEZ-ROJAS:  Yes.

8          THE COURT:  Okay.  And also, Mr. Martinez-

9    Rojas, are you satisfied with the legal representation

10   and advice given to you in your case from Georgia?

11         DEFENDANT MARTINEZ-ROJAS:  Yes.

12         THE COURT:  All right.  For each of the

13   defendants, have you received a copy of the indictment in

14   this case?   I am just going to hold up my copy.

15         DEFENDANT F. ROJAS:  Yes.

16         DEFENDANT MARTINEZ-ROJAS:  Yes.

17         THE COURT:  This is the thick document that

18   describes the charges.  All right.

19         And additionally, for Mr. Martinez-Rojas, have

20   you received a copy of the first superseding indictment

21   from the case in the Northern District of Georgia?

22         DEFENDANT MARTINEZ-ROJAS:  Yes.

23         THE COURT:  All right.  For each of the

24   defendants, were the various indictments -- so for Mr.

25   Rojas, the superseding indictment in New York and for Mr.

24

                         Proceedings

1   Martinez-Rojas, the superseding indictment in New York,

2   as well as the superseding indictment in Georgia, been

3   translated for you from English to Spanish?

4              DEFENDANT F. ROJAS:  Yes.

5              DEFENDANT MARTINEZ-ROJAS:  Yes.

6              THE COURT:  All right.  Have you each of you

7   consulted with your respective attorneys about the

8   indictments?

9              DEFENDANT F. ROJAS:  Yes.

10             DEFENDANT MARTINEZ-ROJAS:  Yes.

11             THE COURT:  And has each of you discussed with

12   your attorney the particular charges to which it's

13   proposed you're going to plead guilty?

14             DEFENDANT F. ROJAS:  Yes.

15             DEFENDANT MARTINEZ-ROJAS:  Yes.

16             THE COURT:  All right.  Counsel, do either of

17   you want me to read the indictment?

18             MS. NEWMAN:  No, your Honor.

19             MR. WALLENSTEIN:  No, Judge and just so the

20   record is clear, I had both the New York and Georgia

21   indictments translated into Spanish and provided Mr.

22   Martinez-Rojas with a copy and we discussed both

23   indictments.

24             THE COURT:  All right.

25             MS. NEWMAN:  And for the record, the indictment

25

Proceedings

1   -- the superseding indictment was translated in my

2   presence word for word by a Spanish interpreter.

3            THE COURT:  Okay.  All right.  So for each of

4   the defendants, do you understand the indictment in the

5   New York case?

6            DEFENDANT F. ROJAS:  Yes.

7            DEFENDANT MARTINEZ-ROJAS:  Yes.

8            THE COURT:  All right.  And then for Martinez-

9   Rojas, do you understand the indictment in the Georgia

10  case?

11           DEFENDANT MARTINEZ-ROJAS:  Yes.

12           THE COURT:  All right.  At this point, I am

13  going to provide you with some information about how this

14  criminal case would move forward if you decided not to go

15  ahead with your guilty plea and discuss some information

16  related to your proposed plea.

17           So for each of you, the first and most

18  important thing you should understand is that you do not

19  have to plead guilty, even if you are guilty.  Under the

20  American legal system, the government or the prosecution

21  has the burden of proving the guilt of a defendant beyond

22  a reasonable doubt. If the government cannot or does not

23  meet its burden proof at trial, the jury in the trial has

24  the duty to find the defendant not guilty even if the

25  defendant is guilty.

26

Proceedings

1           Do you understand that, Mr. Rojas?

2           DEFENDANT F. ROJAS:  Yes, I understand.

3           THE COURT:  And Mr. Martinez-Rojas?

4           DEFENDANT MARTINEZ-ROJAS:  Yes, I understand.

5           THE COURT:  So for you, even if you are guilty,

6  you have a choice.  It's up to you to decide what to do

7  in your respective cases.  You can withdraw your

8  previously entered plea of not guilty and plead guilty as

9  I've been told you wish to do or you can choose to go to

10 trial simply by persisting in your plea of not guilty and

11 make the government meet its burden of proving your guilt

12 beyond a reasonable doubt.

13          Do you understand that right?

14          DEFENDANT F. ROJAS:  Yes.

15          DEFENDANT MARTINEZ-ROJAS:  Yes.

16          THE COURT:  All right.  So each of the

17 defendants said yes.

18          So you should know that as sometimes happened

19 in American courtrooms, including in this courthouse,

20 that a jury at trial has returned a verdict of not guilty

21 even though everyone in the courtroom believed the

22 defendant to be guilty.

23          What the jury was saying in that instance, was

24 not that the defendant wasn't guilty but rather that the

25 government or the prosecution had failed to meet its

27

Proceedings

1  burden of proving the defendant's guilt beyond a

2  reasonable doubt.

3          Do you understand that?

4          DEFENDANT F. ROJAS:  Yes, I understand.

5          DEFENDANT MARTINEZ-ROJAS:  Yes.

6          THE COURT:  All right.  So for you, you have a

7  choice.  You can say to the government, prove your case

8  against me.  Meet your burden of proving my guilt beyond

9  a reasonable doubt and you can exercise that right by

10  saying not guilty when I ask how you plead.

11          If you continue in your plea not guilty, under

12  the Constitution and the laws of the United States of

13  America, you are entitled to a speedy and public trial by

14  jury with the assistance of a lawyer on the charges

15  contained in the indictment that have been filed with the

16  Court.

17          Do you understand, Mr. Rojas?

18          DEFENDANT F. ROJAS:  Yes, I understand.

19          DEFENDANT MARTINEZ-ROJAS:  Yes, I understand.

20          THE COURT:  At trial, you would be presumed

21  innocent.  You would have not to prove your innocence at

22  trial.  Were you to go to trial in your case, it would be

23  the United States government's burden to overcome the

24  presumption of innocence and prove you guilty by

25  competent evidence and beyond a reasonable doubt.

28

Proceedings

1          And if the government failed to meet this

2    burden of proof, the jury would have the obligation to

3    find you not guilty.

4          Do you understand, Mr. Rojas?

5          DEFENDANT F. ROJAS:  Yes.

6          THE COURT:  Mr. Martinez-Rojas?

7          DEFENDANT MARTINEZ-ROJAS:  Yes.

8          THE COURT:  All right.  If you decide to go

9    ahead with your guilty plea, you'll be giving up your

10   right to have the government satisfy its burden of

11   proving you guilty beyond a reasonable doubt.  Instead,

12   you will be admitting your guilt.

13         Do you understand that?

14         DEFENDANT F. ROJAS:  Yes.

15         THE COURT:  All right.  Mr. Martinez-Rojas?

16         DEFENDANT MARTINEZ-ROJAS:  Yes.

17         THE COURT:  In the course of a trial, the

18   witnesses for the government would have to come to court

19   and testify in your presence.  Each of your lawyers would

20   have the right to cross-examine the witnesses for the

21   government, to object to the evidence offered by the

22   government and to offer witnesses and other evidence on

23   your behalf and to subpoena or to compel witnesses to

24   come to court and testify in your presence.

25         Do you understand?

Proceedings

1          DEFENDANT F. ROJAS:  Yes, I understand.

2          DEFENDANT MARTINEZ-ROJAS:  Yes, I do.

3          THE COURT:  All right.  Each of the defendants

4     said they understood.  If you decide to go ahead with

5     your guilty plea and you do, and I recommend that the

6     district judge accept your plea and that's what Judge

7     Korman does, you're giving up the rights that I've just

8     discussed.

9          You're giving up your right to confront the

10    witness who might testify against you.  You're giving up

11    your right to offer evidence on your own behalf.  You're

12    giving up your right to have witnesses come to court or

13    to compel witnesses to come to court and to testify.

14    You're giving up your right to raise any defenses that

15    you may have.

16         Do you understand, Mr. Rojas?

17         DEFENDANT F. ROJAS:  Yes, I understand.

18         THE COURT:  Mr. Martinez-Rojas?

19         DEFENDANT MARTINEZ-ROJAS:  Yes, I understand.

20    Yes.

21         THE COURT:  Were there to be a trial in your

22    case, you would have the right to testify on your own

23    behalf if you choose to do so but you could not be

24    required to testify at trial.  Under the Constitution and

25    laws of the United States, a defendant in a criminal case

30

Proceedings

1  cannot be forced to take the witness stand at his trial

2  and say anything that could be used against him to show

3  that he is guilty of the crime or crimes with which he is

4  charged.

5  So, if you decided not to testify at your

6  trial, the judge would instruct the jury that the jurors

7  could not hold that fact against you.  This is called

8  your right against self-incrimination.

9  Do you understand it, Mr. Rojas?

10  DEFENDANT F. ROJAS:  Yes, I understand.

11  DEFENDANT MARTINEZ-ROJAS:  I understand.

12  THE COURT:  All right.  If you plead guilty,

13  I'm going to have to ask you questions about what you did

14  in order to satisfy myself and in turn the district judge

15  that you are, in fact, guilty of the charges to which you

16  are pleading guilty.

17  As part of that process, you are going to have

18  to answer my questions truthfully, subject to the oath

19  that you took earlier and acknowledge your guilt.

20  Do you understand?

21  DEFENDANT F. ROJAS:  Yes.

22  DEFENDANT MARTINEZ-ROJAS:  Yes.

23  THE COURT:  It is not going to be enough for

24  you simply to say that you're guilty.  You're going to

25  have to tell me what it is that you did such that you are

31

Proceedings

1  in fact guilty of the charges to which you're pleading

2  guilty.

3           Does each of you understand, Mr. Rojas, Mr.

4  Martinez-Rojas then?

5           DEFENDANT F. ROJAS:  Yes, I do.

6           DEFENDANT MARTINEZ-ROJAS:  Yes.

7           THE COURT:  If you plead guilty and I recommend

8  that the district judge accept your plea and that's what

9  Judge Korman does, you will be giving up your

10 constitutional right to a trial and to all the other

11 rights that I have just discussed.  There will not be a

12 further trial of any kind in your case.  If Judge Korman

13 accepts your plea, he will simply enter a judgment of

14 guilty on the basis of that plea.

15          Do you understand that, Mr. Rojas?

16          DEFENDANT F. ROJAS:  Yes, I understand.

17          THE COURT:  Mr. Martinez-Rojas?

18          DEFENDANT MARTINEZ-ROJAS:  Yes.

19          THE COURT:  If after you are sentenced, you or

20 your attorney thinks the Court has not properly followed

21 the law in sentencing you, you can usually appeal your

22 sentence to a higher court.  But by pleading guilty

23 however, you will not except under very limited

24 circumstances, be able to challenge your judgment of

25 conviction by appeal or by a collateral attack.

32

Proceedings

1          Do you understand?

2          DEFENDANT F. ROJAS:  Yes, I understand.

3          DEFENDANT MARTINEZ-ROJAS:  Yes, I understand.

4          THE COURT:  All right.  We're going to go over

5    your plea agreement in a few minutes but I want to draw

6    your attention to a limitation on your right to appeal.

7    So this is a little bit different from what the usual

8    right is because of your plea agreement.

9          So for Mr. Rojas, in Government's Exhibit 4,

10   which is your plea agreement, in paragraph 4 on page 6,

11   there's a provision which I am going to read which says,

12   "The defendant agrees not to file an appeal or otherwise

13   challenge by petition pursuant to 28 United States Code

14   Section 2255 or any other provision, the conviction or

15   sentence in the event that the Court imposes a term of

16   imprisonment of 300 months or below."

17          All right.  So do you understand what I just

18   read?

19          DEFENDANT F. ROJAS:  Yes, I understand.

20          THE COURT:  Did you go over it with your

21   attorney?

22          DEFENDANT F. ROJAS:  Yes.

23          THE COURT:  Are you in agreement with that

24   statement?

25          DEFENDANT F. ROJAS:  Yes, I am in agreement.

33

Proceedings

1          THE COURT:  All right.  And do you understand

2     that it's a limitation on your appellate rights and other

3     rights to attack your sentence and your conviction?

4          DEFENDANT F. ROJAS:  Yes, I understand.

5          THE COURT:  All right.  For Mr. Martinez-Rojas,

6     you have a similar provision in your plea agreement.

7     Your plea agreement is Government's Exhibit 5.  In

8     paragraph 4 on page 8, it provides as follows:

9          "The defendant agrees not to file an appeal or

10    otherwise challenge by petition pursuant to 28 United

11    States Code Section 2255 or any other provision, the

12    conviction or sentence in the event that the Court

13    imposes a term of imprisonment of 327 months or below."

14          Do you understand what I just read?

15          DEFENDANT MARTINEZ-ROJAS:  Yes.

16          THE COURT:  Did you go over that provision with

17    your attorney?

18          DEFENDANT MARTINEZ-ROJAS:  Yes.

19          THE COURT:  Are you in agreement with it?

20          DEFENDANT MARTINEZ-ROJAS:  Yes.

21          THE COURT:  Okay.  So for each of the

22    defendants, are you willing to give up your right to a

23    trial and the other rights that I've just discussed?  Mr.

24    Rojas?

25          DEFENDANT F. ROJAS:  Yes.

34

                              Proceedings

1              THE COURT:  And Mr. Martinez-Rojas?

2              DEFENDANT MARTINEZ-ROJAS:  Yes, yes.

3              THE COURT:  All right.  So just for the record,

4    we're changing the Spanish interpreter.  So can you just

5    state your name, so it's clear?

6              THE INTERPRETER:  I'm James Santoria.

7              THE COURT:  Okay.  All right.  So now we're

8    going to talk about the particulars of your plea

9    agreement.  So for Mr. Rojas again, your plea agreement

10   is marked as Exhibit 4 and Mr. Martinez-Rojas, yours is

11   marked as Government's Exhibit 5.

12             For each of you on the last page of the

13   document, in the middle of the page it says, "I have read

14   the entire agreement and discussed it with my attorney.

15   I understand all of its terms and I am entering into it

16   knowingly and voluntarily."

17             So first for Mr. Rojas, was your plea agreement

18   translated for you from English to Spanish?

19             DEFENDANT F. ROJAS:  Yes.

20             THE COURT:  Okay.  Is that statement that I

21   have just read, which I will read again for the record,

22   "I have read the entire agreement and discussed it with

23   my attorney.  I understand all of its terms and I am

24   entering into it knowingly and voluntarily," is that a

25   correct statement?

35

Proceedings

1        DEFENDANT F. ROJAS:  Yes.

2        THE COURT:  All right.  I am going to show you

3  some signatures.  I'm holding up the original copy, Mr.

4  Rojas.  I'm pointing right below the signature I just

5  read.

6            Is that your signature?

7        DEFENDANT F. ROJAS:  Yes.

8        THE COURT:  And then Ms. Newman, right below

9  that, is that your signature?

10        MS. NEWMAN:  Yes, it is and just for the record

11  so it's clear, Ms. Carmen Espinal (ph.) who is appointed

12  paralegal and Spanish speaking, did translate the plea

13  agreement in my presence approximately two weeks ago.

14  And I was present for that.  We answered all his

15  questions at that time.

16        THE COURT:  All right.  And what was translated

17  the same copy of the plea agreement as the one we have

18  today?

19        MS. NEWMAN:  Yes, yes, yes.

20        THE COURT:  Okay.  All right.  And then we have

21  both of you here, so Ms. Lee for the government, first is

22  that your signature?

23        MS. LEE:  Yes, your Honor.

24        THE COURT:  And Ms. Merkl, her supervisor, is

25  that your signature?

36

Proceedings

1          MS. MERKL:  Yes, Judge.

2          THE COURT:  Okay.  All right.  I am going to

3    show you, Mr. Rojas, page 8.  I'm holding up this copy.

4    There was a handwritten amendment to paragraph 6 to the

5    second full sentence.  The second full sentence now

6    reads, "The defendant represents that he will disclose

7    all of his assets to the United States on the financial

8    statement within thirty days entitled, "United States

9    Department of Justice Financial Statement, hereinafter

10   the 'financial statement'," a copy of which," it says,

11   "is attached hereto as Exhibit A."

12          Do you need to change that last will be

13   attached?

14          MS. MERKL:  Yes, it will be attached.

15          THE COURT:  All right.  Here.  I'm going to

16   just correct it.  All right.  Can you just show that to

17   everybody?  So can you initial that change to it now

18   says "will be," and then just confirm on the record for

19   the government -- I'm not sure which government attorney

20   is initialing it, was that Ms. Lee?

21          MS. LEE:  Yes, your Honor.

22          THE COURT:  All right.

23          MS. LEE:  I did.

24          THE COURT:  All right.  So Ms. Newman, can you

25   confirm the initials that are there now are yours and

Proceedings

1   also initial that will be change?  And then have your

2   client initial as well and confirm on the record that

3   he's initialed that.

4          MS. NEWMAN:  Yes.  Yes, your Honor, we have --

5   my client initialed in my presence the two changes.

6          THE COURT:  Okay.

7          MS. NEWMAN:  One that was originally made and

8   the second change as the Court has pointed out and that

9   we've now made on the record.

10          THE COURT:  And you've initialed it as well?

11          MS. NEWMAN:  Yes, we have.

12          THE COURT:  All right.  And were you able to

13   review that change with the assistance of a Spanish-

14   language interpreter?

15          MS. NEWMAN:  Yes, I was.

16          THE COURT:  Okay.  All right.  So, Mr.

17   Martinez-Rojas, we're just going to go over together the

18   initials and signing of your plea agreement which is

19   Government's Exhibit 5.

20          So similarly, as I said, your agreement says,

21   "I have read the entire agreement and discussed it with

22   my attorney.  I understand all of its terms and I am

23   entering into it knowingly and voluntarily."

24          Was this plea agreement translated for you from

25   English to Spanish?

38

                              Proceedings

1              DEFENDANT MARTINEZ-ROJAS:  Yes.

2              THE COURT:  And is that statement that I just

3    read a correct statement?

4              DEFENDANT MARTINEZ-ROJAS:  Yes.

5              THE COURT:  All right.  And right below that

6    statement is a signature.  I'm holding up my copy which

7    is the original.  Is that your signature?

8              DEFENDANT MARTINEZ-ROJAS:  Yes.

9              THE COURT:  And then Mr. Wallenstein over here,

10   is that your signature?

11             MR. WALLENSTEIN:  It is, your Honor and for the

12   record not only did I discuss that with Mr. Martinez-

13   Rojas, with the assistance of a Spanish interpreter but I

14   had the agreement translated into Spanish and provided

15   him with a copy written in Spanish.

16             THE COURT:  And then is that -- the work that

17   you just referred to, was that done by J. Carlos Venant

18   (ph.)?

19             MR. WALLENSTEIN:  Yes.

20             THE COURT:  Okay.  And then for the government,

21   Ms. Lee, up at the top, is that your signature?

22             MS. LEE:  Yes, your Honor.

23             THE COURT:  And your supervisor, Ms. Merkl, is

24   that your signature?

25             MS. MERKL:  Yes, Judge.

39

Proceedings

1          THE COURT:  All right.  So on page 11,

2   paragraph 6, there was a handwritten change, Mr.

3   Martinez-Rojas, to the plea agreement.  So the relevant

4   sentence in paragraph 6 which is the second sentence now

5   says, "The defendant represents that he will disclose all

6   of his assets within thirty days to the United States on

7   the financial statement entitled, "Department of Justice

8   Financial Statement, hereinafter the 'financial

9   statement,' a copy of which will be attached hereto as

10  Exhibit A."

11          Do you understand that sentence?

12          DEFENDANT MARTINEZ-ROJAS:  Yes.

13          THE COURT:  Did you go over it with your

14  lawyer?

15          DEFENDANT MARTINEZ-ROJAS:  Yes.

16          THE COURT:  And are you in agreement with that

17  sentence?

18          DEFENDANT MARTINEZ-ROJAS:  Yes.

19          THE COURT:  Here, I am going to ask Ms. Quinlan

20  to just have the parties initial the change where the

21  will be and confirm on the record for the government and

22  for the defendant, that those initials are in fact the

23  respective initials.  So Mr. Wallenstein, if you could

24  initial and just let me know that you have initialed that

25  sentence.

40

Proceedings

1           So, Mr. Wallenstein, you initialed it, is that

2   right?

3           MR. WALLENSTEIN:  I did, your Honor and my

4   client is about to.

5           THE COURT:  Okay.

6           MR. WALLENSTEIN:  And, Judge, my client have

7   both initialed all of the changes in this document.

8           THE COURT:  Okay.  Thanks.  Have the

9   government, just show it then.  So Ms. Lee, you're

10  initialing it, is that right, the change?

11          MS. LEE:  Yes, your Honor, I am.

12          THE COURT:  Okay.  All right.  We're going to

13  go over this in a little bit more detail now.  Just for

14  each counsel, Ms. Newman and Mr. Wallenstein, were all

15  formal offers -- plea offers by the government conveyed

16  to your respective client?

17          MS. NEWMAN:  Yes, for Mr. Rojas.

18          MR. WALLENSTEIN:  Yes, your Honor.  I conveyed

19  all the offers to Mr. Martinez-Rojas and discussed them

20  with him.

21          THE COURT:  Okay.  All right.  So for each of

22  the defendants, have you read the plea agreement?  So,

23  for Mr. Rojas, did you read the plea agreement in Spanish

24  or it was read to you in Spanish, I think?

25          DEFENDANT F. ROJAS:  Yes.

                                                                    41
                              Proceedings

1           THE COURT:  All right.  So let me ask -- make

2    sure that's clear.  So, Mr. Felix Rojas, is it correct

3    that the plea agreement was read to you in Spanish?

4           DEFENDANT F. ROJAS:  Yes.

5           THE COURT:  And then Mr. Wallenstein, you had a

6    written copy provided to your client or it was read to

7    him in Spanish, which one?

8           MR. WALLENSTEIN:  Both.

9           THE COURT:  Okay.  Both.  So, Mr. Martinez-

10   Rojas, did you read a copy of your plea agreement in

11   Spanish?

12          DEFENDANT MARTINEZ-ROJAS:  Yes.

13          THE COURT:  And was the plea agreement read to

14   you in Spanish, as well?

15          DEFENDANT MARTINEZ-ROJAS:  Yes.

16          THE COURT:  All right.  So for each of the

17   defendants, in reviewing the plea agreement, did you have

18   the assistance of a Spanish-language interpreter?  Mr.

19   Rojas?

20          DEFENDANT F. ROJAS:  Yes.

21          THE COURT:  And Mr. Martinez-Rojas?

22          DEFENDANT MARTINEZ-ROJAS:  Yes.

23          THE COURT:  And for each defendant, did you

24   review the plea agreement with your attorney?  Mr. Rojas?

25          DEFENDANT F. ROJAS:  Yes.

42

                              Proceedings

1            THE COURT:  Mr. Martinez-Rojas?

2            DEFENDANT MARTINEZ-ROJAS:  Yes.

3            THE COURT:  All right.  And for each of you

4    when you were reviewing the agreement, did you have the

5    assistance -- sorry, reviewing it with your attorney, did

6    you have the assistance of a Spanish-language

7    interpreter?  So, Mr. Rojas?

8            DEFENDANT F. ROJAS:  Yes.

9            THE COURT:  Mr. Martinez-Rojas?

10           DEFENDANT MARTINEZ-ROJAS:  Yes.

11           THE COURT:  All right.  For each of you, do you

12   understand all of the terms of your respective plea

13   agreements?  Mr. Rojas?

14           DEFENDANT F. ROJAS:  Yes, yes.

15           THE COURT:  Mr. Martinez-Rojas?

16           DEFENDANT MARTINEZ-ROJAS:  Yes, yes.

17           THE COURT:  For each of the defendants, does

18   your respective plea agreement -- so for Mr. Felix Rojas,

19   Government's Exhibit 4, for Mr. Martinez-Rojas,

20   Government's Exhibit 5, does it accurately represent the

21   entire understanding or agreement that you have with the

22   government?  Mr. Rojas?

23           DEFENDANT F. ROJAS:  Yes.

24           THE COURT:  Mr. Martinez-Rojas?

25           DEFENDANT MARTINEZ-ROJAS:  Yes.

43

Proceedings

1          THE COURT:  All right.  For each of you, has

2   anyone made any promise or assurance to you that's not

3   included in the plea agreement in order to get you to

4   agree to this plea agreement?

5          DEFENDANT F. ROJAS:  No.

6          THE COURT:  Mr. Martinez-Rojas?

7          DEFENDANT MARTINEZ-ROJAS:  No.

8          THE COURT:  All right.  Has anyone threatened

9   you in any way to persuade you to accept the plea

10  agreement?

11         DEFENDANT F. ROJAS:  No.

12         THE COURT:  Mr. Martinez-Rojas?

13         DEFENDANT MARTINEZ-ROJAS:  No.

14         THE COURT:  Okay.  All right.  For defense

15  counsel, let me just make sure.  Has each of you read and

16  reviewed with your client the written plea agreement that

17  is before the Court as to your respective client?

18         MS. NEWMAN:  Yes.

19         MR. WALLENSTEIN:  Yes, your Honor, I have.

20         THE COURT:  Okay.  And each of you had the

21  assistance of a Spanish-language interpreter when you

22  were discussing the plea agreement with your client,

23  right?

24         MS. NEWMAN:  Yes, that's correct.

25         MR. WALLENSTEIN:  Yes, your Honor.

44

Proceedings

1      THE COURT:  All right.  And for each of you, as
2  to your respective client's plea agreement, does it
3  reflect your understanding of the entire agreement that
4  your client has entered into with the government?
5      MS. NEWMAN:  Yes, for Mr. Rojas.
6      MR. WALLENSTEIN:  And for Mr. Martinez-Rojas,
7  it does, your Honor.
8      THE COURT:  Okay.  For the defendants, do you
9  understand that if you fail to fully comply with your
10  agreement with the government, the government will be
11  released from its obligations but you will not be
12  released from your guilty plea.
13      Do you understand that?
14      DEFENDANT F. ROJAS:  Yes.
15      DEFENDANT MARTINEZ-ROJAS:  Yes.
16      THE COURT:  All right.  Each of the defendants
17  said yes.  All right.
18      So now I am going to explain the sentencing
19  scheme applicable in  your case.  I'm going to first go
20  over Mr. Felix Rojas' applicable sentencing scheme but
21  Mr. Martinez-Rojas, I would appreciate if you would
22  listen because some of the information is going to relate
23  to your case as well.
24      So for Mr. Felix Rojas, this is what I am going
25  to go over as outlined in your plea agreement which is

45

Proceedings

1   Government's Exhibit 4 which proposed is that you're

2   going to plead guilty to Count 1 and Count 17 of the

3   superseding indictment in the case in New York.  It

4   charges you with violations of particular statutes.

5   Those are 18 United States Code Section 1962(c) and

6   1591(a) and as part of your guilty plea, you are going to

7   admit to racketeering -- as racketeering acts, your

8   participation in the sex trafficking of Jane Doe number

9   6, which is alleged as Racketeering Act 8(a) and Count 17

10  of the indictment, as well as sex trafficking of Jane

11  Doe, which is alleged as  Racketeering Act 10(a) and

12  Count 21.

13          All right.  Do you understand that?

14          DEFENDANT F. ROJAS:  Yes, I understand.

15          THE COURT:  All right.  So those counts carry

16  the following statutory penalties; a maximum term of

17  imprisonment of life.  This is -- I'm sorry, let me start

18  that again.

19          Count 1 carries a maximum term of imprisonment

20  of life.  It carries a minimum term of imprisonment of no

21  time in prison.  It carries a maximum supervised release

22  term of five years.  That supervised release term would

23  follow any term of imprisonment.

24          If a condition of release were violated, you

25  may be sentenced for up to five years without credit for

46

Proceedings

1   pre-release imprisonment or time previously served on

2   post-release supervision.

3            Do you understand that?

4            DEFENDANT F. ROJAS:  Yes, I understand.

5            THE COURT:  All right.  Supervised release

6   would mean that there may be many restrictions placed on

7   your liberty.  Those restrictions may include but are not

8   limited to travel limitations, requirements that you

9   report regularly to a probation officer, a prohibition on

10  carrying a gun or other weapons and the like.

11           Do you understand that supervised release?

12           DEFENDANT F. ROJAS:  Yes, I understand.

13           THE COURT:  All right.  Additional possible

14  sentencing consequences for Count 1 include the maximum

15  fine would be the greater of $250,000 or twice the gross

16  gain or twice the gross loss.

17           Do you understand that?

18           DEFENDANT F. ROJAS:  Yes, I understand.

19           THE COURT:  Restitution is mandatory in your

20  case.  It will be in the full amount of each victim's

21  losses as determined by the judge.

22           Do you understand that?

23           DEFENDANT F. ROJAS:  Yes, I understand.

24           THE COURT:  All right.  There's a $100 special

25  assessment that you have to be charged.

47

Proceedings

1          Do you understand that?

2          DEFENDANT F. ROJAS:  Yes, I understand.

3          THE COURT:  Other sentencing consequences

4  include removal from the United States.  This is

5  described in paragraph 8.  So I am going to go over that.

6          All right.  Let me just ask, was this defendant

7  extradited or were they in the United States?

8          MS. MERKL:  These two defendants were both

9  extradited, your Honor.

10          THE COURT:  Okay.  All right.  So I am going to

11  explain to you a provision that's in the plea agreement

12  -- really just go over what's in the plea agreement,

13  which relates to your immigration status in the United

14  States.

15          What paragraph 8 explains is that pleading

16  guilty may have consequences for any immigration status

17  that you might have in the United States if you're not a

18  citizen of the United States.  Under federal law, a broad

19  range of crimes are what are called removable offenses

20  including the ones to which it's proposed that you're

21  going to plead guilty.

22          In fact, because you're going to plead guilty

23  to racketeering involving sex trafficking and interstate

24  prostitution, your removal from the United States is

25  presumptively mandatory but immigration consequences are

48

Proceedings

1  decided in a separate proceeding.  So nobody here can

2  tell you exactly what the immigration consequences of a

3  guilty plea would be.

4          But what I would like to know is is it correct

5  that you would like to go ahead with your guilty plea

6  regardless of any immigration consequences that guilty

7  plea may entail including possibly the automatic removal

8  from the United States.

9          Is that correct, Mr. Rojas?

10          DEFENDANT F. ROJAS:  Yes, I understand.

11          THE COURT:  Okay.  Additional possible

12  sentencing consequences includes sex offender

13  registration pursuant to a federal act called, Sex

14  Offender Registration Notification Act, 42 United States

15  Code Section 16901, et seq., meaning the sections

16  following on.

17          That's described in paragraph 11 of your

18  agreement with the government.  Do you understand

19  paragraph 11?

20          DEFENDANT F. ROJAS:  Yes.

21          THE COURT:  Did you review it with your

22  attorney?

23          DEFENDANT F. ROJAS:  Yes.

24          THE COURT:  All right.  And are the statements

25  made in paragraph 11 correct?

49

Proceedings

1          DEFENDANT F. ROJAS:  Yes.

2          THE COURT:  Additionally, the possible

3   sentencing consequences include criminal forfeiture.

4   That's described in paragraph 6 and 7 of your plea

5   agreement which is Government's Exhibit 4.

6          Have you read or was paragraph 6 and paragraph

7   7 read to you in Spanish?

8          DEFENDANT F. ROJAS:  Yes.

9          THE COURT:  Do you understand paragraph 6 and

10  7?

11         DEFENDANT F. ROJAS:  Yes, I understand.

12         THE COURT:  Did you have a sufficient

13  opportunity to review paragraph 6 and 7 with your

14  attorney?

15         DEFENDANT F. ROJAS:  Yes.

16         THE COURT:  Are you in agreement with paragraph

17  6 and 7?

18         DEFENDANT F. ROJAS:  yes.

19         THE COURT:  All right.  Now we're going to talk

20  about the possible sentencing consequences of Count 17.

21  The maximum term of imprisonment is life.  The minimum

22  term of imprisonment is fifteen years.

23         Do you understand those provisions?

24         DEFENDANT F. ROJAS:  Yes, I understand.

25         THE COURT:  Do you understand that the judge

50

Proceedings

1  has to sentence you to a minimum term of imprisonment of

2  fifteen years?

3          DEFENDANT F. ROJAS:  Yes, I understand that.

4          THE COURT:  All right.  Additional possible

5  sentencing consequences include a minimum supervised

6  release term of five years with a maximum supervised

7  release term of life which would follow any term of

8  imprisonment.  If a condition of release is violated, you

9  may be sentenced for up to life without credit for pre-

10 release imprisonment or time previously served on post-

11 release supervision.

12         Do you understand that provision?

13         DEFENDANT F. ROJAS:  Yes, I understand.

14         THE COURT:  If you commit any criminal offense

15 under particular laws which are outlined in your plea

16 agreement which are Chapter 109(a), 110, or 117 or Title

17 18 of the United States Code Section 1201 or 1591, for

18 which imprisonment for a term longer than one year can be

19 imposed, you shall be sentenced to not less than five

20 years and up to the maximum term of imprisonment for the

21 offense which was set forth in paragraph 1(a) which was

22 life.

23         Do you understand that provision?

24         DEFENDANT F. ROJAS:  Yes, I understand.

25         THE COURT:  Additionally, the maximum fine is

51

Proceedings

1  the greater of $250,000 or twice the gross gain or twice

2  the gross loss.

3          Do you understand that?

4          DEFENDANT F. ROJAS:  Yes, I understand.

5          THE COURT:  Restitution is mandatory in the

6  full amount of each victim's losses as determined by the

7  Court.

8          Do you understand that?

9          DEFENDANT F. ROJAS:  Yes, I understand.

10          THE COURT:  You have to be charged $100

11  special assessment.

12          Do you understand that?

13          DEFENDANT F. ROJAS:  Yes, I understand.

14          THE COURT:  Similar to the previous count,

15  penalties include removal from the United States as

16  described in paragraph 8, sex offender registration

17  pursuant to the Sex Offender Registration Notification

18  Act, which is described in paragraph 11 and criminal

19  forfeiture, which is set forth below in paragraphs 6 and

20  7.

21          So we went over earlier paragraphs 6, 7, 8, and

22  11.  Do you understand all of those provisions?

23          DEFENDANT F. ROJAS:  Yes.

24          THE COURT:  All right.  Also, the agreement and

25  the sentencing scheme provide the sentence imposed on

52

                            Proceedings

1    each count may run consecutively.  So not at the same

2    time but one after the other.

3              Do you understand that?

4              DEFENDANT F. ROJAS:  Yes, I understand.

5              THE COURT:  Okay.  So, Mr. Martinez-Rojas, I am

6    going to go over the same parts of your plea agreement

7    which has been marked as Government's Exhibit 5.

8              In your case, what's proposed is that you are

9    going to plead guilty to Counts 1 and 19 of the New York

10   case, which has a number 15-cr-348.  We're going to talk

11   about it as the EDNY or Eastern District of New York

12   indictment that charges you with violations of 18 United

13   States Code Sections 1962(s) and 1591(a) and during your

14   guilty plea, you're going to admit as racketeering acts,

15   your participation in the sex trafficking of Jane Doe 1,

16   as alleged in the Racketeering Acts 3(a), 3(b) and Count

17   7 and 8 of the indictment, sex trafficking of a minor,

18   Jane Doe 3, as alleged in Racketeering Act 5(a) and Count

19   11, the sex trafficking of Jane Doe 6, as alleged in Act

20   8(a) and Count 17, sex trafficking of Jane Doe 7, as

21   alleged in Racketeering Act 9(a) and Count 19 and sex

22   trafficking of Jane Doe 9, as alleged in Racketeering Act

23   11(a) and Count 23.

24             Do you understand all of that?

25             DEFENDANT MARTINEZ-ROJAS:  Yes.

53

Proceedings

1          THE COURT:  You're also going to plead guilty

2    to Count 1 of the Georgia case.  The Georgia case is

3    known by the number 13-cr-128 and it's referred to as the

4    NDGA or Northern District of Georgia indictment.  It

5    charges you with violations 18 United States Code Section

6    1591(a) and at your guilty plea, you're going to admit to

7    your participation in sex trafficking of an individual

8    identified as "MSJ" as alleged in Count 3 and sex

9    trafficking of an individual as "SAM" as alleged in Count

10   5.

11          Do you understand that?

12          DEFENDANT MARTINEZ-ROJAS:  Yes.

13          THE COURT:  Okay. So with regard to the

14   indictment in the Eastern District of New York or the

15   EDNY indictment, Count 1, these are the following -- the

16   following is the statutory -- possible statutory

17   penalties.  All right.

18          So for Count 1, the maximum term of

19   imprisonment is life.  The minimum term of imprisonment

20   is zero years.

21          Do you understand that?

22          DEFENDANT MARTINEZ-ROJAS:  Yes.

23          THE COURT:  The maximum supervised release term

24   is five years.  It would follow any term of imprisonment.

25   If a condition of supervised release were violated, you

54

Proceedings

1  may be sentenced for up to five years and you would not

2  receive credit for pre-release imprisonment or time

3  previously served on post-release supervision.

4          Do you understand that?

5          DEFENDANT MARTINEZ-ROJAS:  Yes.

6          THE COURT:  And as I said to your colleague,

7  Mr. Rojas, if you're subject to supervised release or

8  when you're subject to supervised release, there may be

9  many restrictions placed on your liberty including

10  limitations on travel, limitations on your right to carry

11  any weapon and the requirement that you report to

12  probation on a regular basis, as well as other possible

13  limitations.

14          Do you understand that?

15          DEFENDANT MARTINEZ-ROJAS:  Yes.

16          THE COURT:  The maximum fine under Count 1 is

17  the greater of 250,000 dollars or twice the gross gain or

18  twice the gross loss.

19          Do you understand that?

20          DEFENDANT MARTINEZ-ROJAS:  Yes.

21          THE COURT:  All right.  Restitution is

22  mandatory in the full amount of each victim's losses as

23  decided by the Court and you must be charged $100 special

24  assessment.

25          Do you understand those provisions?

Proceedings

1           DEFENDANT MARTINEZ-ROJAS:  Yes.

2           THE COURT:  All right.  Other penalties include

3    removal from the United States as described in paragraph

4    8.  Did you hear what I said to Mr. Rojas about what

5    removal means?

6           DEFENDANT MARTINEZ-ROJAS:  Yes.

7           THE COURT:  Do you understand it?

8           DEFENDANT MARTINEZ-ROJAS:  Yes.

9           THE COURT:  Did you review paragraph 8 in your

10   plea agreement which is Government's Exhibit 5?

11          DEFENDANT MARTINEZ-ROJAS:  Yes.

12          THE COURT:  And it was translated for you from

13   English to Spanish, correct?

14          DEFENDANT MARTINEZ-ROJAS:  Yes.

15          THE COURT:  Did you have a sufficient

16   opportunity to review paragraph 8 with your attorney?

17          DEFENDANT MARTINEZ-ROJAS:  Yes.

18          THE COURT:  Are you in agreement with paragraph

19   8?

20          DEFENDANT MARTINEZ-ROJAS:  Yes.

21          THE COURT:  And is it correct that despite the

22   serious immigration consequences, including your possible

23   removal or automatic removal from the United States,

24   which is in fact presumptively mandatory, that you would

25   still like to go ahead with your guilty plea regardless

Proceedings

1   of these immigration consequences?

2            DEFENDANT MARTINEZ-ROJAS:  Yes.

3            THE COURT:  All right.  Other possible

4   penalties include sex offender registration pursuant to

5   the Sex Offender Registration Notification Act, 42 United

6   States Code Section 16901, et seq., meaning following on,

7   which is described in paragraph 11.

8            Did you read paragraph 11 in the Spanish

9   translation of your plea agreement?

10           DEFENDANT MARTINEZ-ROJAS:  Yes.

11           THE COURT:  Do you understand paragraph 11?

12           DEFENDANT MARTINEZ-ROJAS:  Yes.

13           THE COURT:  Are you in -- well, I am sorry, did

14   you review paragraph 11 with your attorney?

15           DEFENDANT MARTINEZ-ROJAS:  Yes.

16           THE COURT:  And are you in agreement with

17   paragraph 11?

18           DEFENDANT MARTINEZ-ROJAS:  Yes.

19           THE COURT:  Another possible sentencing

20   consequence is criminal forfeiture which is described in

21   paragraph 6 and 7 of your plea agreement.

22           Did you read them in Spanish, paragraph 6 and

23   7?

24           DEFENDANT MARTINEZ-ROJAS:  Yes.

25           THE COURT:  Do you understand them?

57

Proceedings

1          DEFENDANT MARTINEZ-ROJAS:  Yes.

2          THE COURT:  Are the statements in paragraph 6

3    and 7 correct?

4          DEFENDANT MARTINEZ-ROJAS:  Yes.

5          THE COURT:  And is it correct you went over

6    paragraph 6 and 7 with your attorney?

7          DEFENDANT MARTINEZ-ROJAS:  Yes.

8          THE COURT:  And is it correct that you're in

9    agreement with paragraph 6 and 7?

10          DEFENDANT MARTINEZ-ROJAS:  Yes.

11          THE COURT:  All right.  I am going to go over

12    possible sentencing consequences of Count 19 of the

13    Eastern District of New York indictment.  The maximum

14    term of imprisonment is life.

15          Do you understand that?

16          DEFENDANT MARTINEZ-ROJAS:  Yes.

17          THE COURT:   The minimum term of imprisonment

18    is fifteen years.

19          Do you understand that?

20          DEFENDANT MARTINEZ-ROJAS:  Yes.

21          THE COURT:  So you understand the judge has to

22    sentence you to at least fifteen years in jail or in

23    prison.

24          Do you understand that?

25          DEFENDANT MARTINEZ-ROJAS:  Yes.

Proceedings

1          THE COURT:  All right.  Similar to the previous

2  count, there's a minimum supervised release term.  In

3  this count it's five years and the maximum supervised

4  release term is life.

5          So I am not sure I said that clearly.  The

6  minimum supervised release term is five years.  The

7  maximum supervised release term is life.  It would follow

8  any term of imprisonment.  If a condition of released

9  were violated, you may be sentenced for up to life

10  without credit for pre-release imprisonment or time

11  previously served on post-release supervision.

12          Do you understand that?

13          DEFENDANT MARTINEZ-ROJAS:  Yes.

14          THE COURT:  All right.  If you commit any

15  offense under particular federal laws which are Chapter

16  109(a), 110 or 177, or Title 18 of the United States Code

17  Sections 1201 or 1591, for which imprisonment for a term

18  longer than one year can be imposed, you shall be

19  sentenced to not less than five years and up to the

20  maximum term of imprisonment for the offense which is

21  described in paragraph 1(a) and which is life.

22          Do you understand those provisions?

23          DEFENDANT MARTINEZ-ROJAS:  Yes.

24          THE COURT:  All right. Similarly, this count

25  carries a maximum fine of the greater of $250,000 or

59

Proceedings

1  twice the gross gain or twice the gross loss, as well as

2  a restitution provision in which restitution is mandatory

3  in the full amount of each victim's loss as determined by

4  the Court.

5            Do you understand that?

6            DEFENDANT MARTINEZ-ROJAS:  Yes.

7            THE COURT:  You have to be charged $100 special

8  assessment.

9            Do you understand that?

10            DEFENDANT MARTINEZ-ROJAS:  Yes.

11            THE COURT:  All right.  Other penalties include

12  removal from the United States as set forth in paragraph

13  8.  I've already asked you about paragraph 8 but is it

14  correct that you understand paragraph 8?

15            DEFENDANT MARTINEZ-ROJAS:  Yes.

16            THE COURT:  And is it correct that even though

17  paragraph 8 describes that your removal from the United

18  States is presumptively mandatory, if you go ahead with

19  this guilty plea, that you still wish to go ahead with

20  the plea despite those serious immigration consequences?

21  Is that correct?

22            DEFENDANT MARTINEZ-ROJAS:  Yes.

23            THE COURT:  All right.  Other possible

24  sentencing consequences include sex offender registration

25  pursuant to the Sex Offender Registration Notification

Proceedings

1    Act, 42 United States Code Section 16901, et seq. as

2    described in paragraph 11.

3              Is it correct as you said earlier that you have

4    reviewed paragraph 11 of your plea agreement?

5              DEFENDANT MARTINEZ-ROJAS:  Yes.

6              THE COURT:  All right.  And is it correct that

7    you're in agreement with what it says in paragraph 11?

8              DEFENDANT MARTINEZ-ROJAS:  Yes.

9              THE COURT:  All right.  And lastly, it's an

10   additional possible sentencing consequence is criminal

11   forfeiture which is described in paragraph 6 and 7 of

12   your plea agreement which is Government's Exhibit 5.

13             Is it correct that you understand paragraphs 6

14   and 7?

15             DEFENDANT MARTINEZ-ROJAS:  Yes.

16             THE COURT:  Okay.  And are you in agreement

17   with the statements in paragraphs 6 and 7?

18             DEFENDANT MARTINEZ-ROJAS:  Yes.

19             THE COURT:  All right.  So before we start

20   talking about the Georgia indictment, let me just ask

21   globally with regard to your plea agreement, Mr.

22   Martinez-Rojas, do you understand all of the possible

23   sentencing consequences that I've gone over, Mr.

24   Martinez-Rojas?

25             DEFENDANT MARTINEZ-ROJAS:  Yes.

61

                        Proceedings

1          THE COURT: Okay.  And did you have a sufficient

2    opportunity to review them with your attorney?

3          DEFENDANT MARTINEZ-ROJAS:  Yes.

4          THE COURT:  And do you understand that Count 19

5    provides for a minimum term of imprisonment of fifteen

6    years?

7          DEFENDANT MARTINEZ-ROJAS:  Yes.

8          THE COURT:  All right.  Now we're going to talk

9    about Count One of the Northern District of Georgia

10   indictment.  For that count, it provides for a maximum

11   term of imprisonment of life.

12          Do you understand that?

13          DEFENDANT MARTINEZ-ROJAS:  Yes.

14          THE COURT:  It also provides for a minimum term

15   of imprisonment of fifteen years.

16          Do you understand that?

17          DEFENDANT MARTINEZ-ROJAS:  Yes.

18          THE COURT:  It provides for a minimum

19   supervised release term of five years, a maximum

20   supervised release term of life.  The supervised release

21   would follow any term of imprisonment.  If a condition of

22   release were violated, you may be sentenced for up to

23   life without credit for pre-release imprisonment or time

24   previously served on post-release supervision.

25          And if you commit any criminal offense under

62

Proceedings

1  particular federal laws, which are Chapter 109(a), 110,

2  117, or 18 United States Code Section 1201 or 1591, for

3  which a term longer than one year of imprisonment can be

4  imposed, you shall be sentenced to not less than five

5  years and up to the maximum term of imprisonment for the

6  offense as described in paragraph 1(a) which is life.

7          Do you understand those provisions?

8          DEFENDANT MARTINEZ-ROJAS:  Yes.

9          THE COURT:  The maximum fine is the greater of

10 $250,000 or twice the gross gain or twice the gross loss.

11         Do you understand that?

12         DEFENDANT MARTINEZ-ROJAS:  Yes.

13         THE COURT:  Restitution is mandatory in the

14 full amount of each victim's losses as determined by the

15 Court and you have to be charged $100 special assessment.

16         Do you understand those provisions?

17         DEFENDANT MARTINEZ-ROJAS:  Yes.

18         THE COURT:  All right.  As with the other

19 counts, additional possible sentencing consequences

20 include your removal from the United States as described

21 in paragraph 8.  I've asked you this before I want to

22 make sure you understand it in connection with the

23 Georgia indictment.

24         The offenses to which you are pleading guilty

25 mean that your removal from the United States is

63

Proceedings

1   presumptively mandatory.

2           Do you understand that?

3           DEFENDANT MARTINEZ-ROJAS:  Yes.

4           THE COURT:  Despite the serious immigration

5   consequences including your presumptive removal from the

6   United States.

7           Do you still want to go ahead with your guilty

8   plea?

9           DEFENDANT MARTINEZ-ROJAS:  Yes.

10          THE COURT:  All right.  Other sentencing

11  consequences include the sex offender registration

12  pursuant to the Sex Offender Registration Notification

13  Act which is described in paragraph 11 of your plea

14  agreement.

15          Do you understand paragraph 11?

16          DEFENDANT MARTINEZ-ROJAS:  Yes.

17          THE COURT:  And are you in agreement with it?

18          DEFENDANT MARTINEZ-ROJAS:  Yes.

19          THE COURT:  And criminal forfeiture as set

20  forth in paragraphs 6 and 7.

21          Do you understand paragraphs 6 and 7?

22          DEFENDANT MARTINEZ-ROJAS:  Yes.

23          THE COURT:  And are you in agreement with those

24  paragraphs?

25          DEFENDANT MARTINEZ-ROJAS:  Yes.

64

Proceedings

1           THE COURT:  All right.  This plea agreement --

2    let me say that differently, sorry.

3           The sentence imposed on each count may run

4    consecutively which means one sentence after another, not

5    at the same time.  Do you understand that?

6           DEFENDANT MARTINEZ-ROJAS:  Yes.

7           THE COURT:  Okay.  All right.  Let me just make

8    sure you understand the Northern District of Georgia

9    indictment, Count 1, if you decide to plead guilty to

10   that, it includes a minimum term of imprisonment of 15

11   years.

12          Do you understand that?

13          DEFENDANT MARTINEZ-ROJAS:  Yes.

14          THE COURT:  Okay.  All right.  I am going to --

15   All right.  Let me just take a one minute break,

16   everybody.  If you want to -- if the marshals are okay,

17   just stretch for a minute.  Do we have water there,

18   Krista?

19          (Off the record.)

20          THE COURT:  -- earlier, the district judge,

21   Judge Korman is going to be the sentencing judge.  The

22   district judge or the sentencing judge does not have

23   complete discretion to impose a sentence outside of the

24   statutory minimum and maximum sentences set forth in the

25   statute.

Proceedings

1          Each of the defendants, do you understand that,

2   Mr. Rojas?

3          DEFENDANT F. ROJAS:  Yes.

4          THE COURT:  Mr. Martinez-Rojas?

5          DEFENDANT MARTINEZ-ROJAS:  Yes.

6          THE COURT:  All right.  So each of the

7   defendants said yes.  Right?  That was the translation?

8   Actually, why don't -- for the interpreter, can we just

9   move the microphone closer to you?  Yes, thanks.

10         All right.  In the sentencing process, as a

11  first step, the judge must consider what are called the

12  advisory sentencing guidelines which have been issued by

13  the United States Sentencing Commission to determine

14  what's a reasonable sentence in a criminal case.

15         As a second step, the judge must consider

16  whether there are factors present that would allow the

17  sentencing judge to depart from the advisory sentencing

18  guidelines either upwardly or downwardly.

19         Additionally, the judge has to review the

20  factors that are set forth in a particular federal

21  statute which is 18 United States Code Section 3553(a).

22  The judge compares those factors against all of the facts

23  and circumstances of your particular case and it might be

24  that the judge decides to impose a non-guideline

25  sentence.

66

Proceedings

1        But the practical bottom line for you is until

2   the date of sentencing, when the judge reviews the

3   materials from today's proceeding, reviews a presentence

4   report that will be prepared about you and hears from

5   you, your lawyer and the government, you cannot know with

6   certainty what the sentencing guidelines will be for your

7   case or whether there will be grounds for the judge to

8   depart from them.  Or whether the judge will impose a

9   non-guideline sentence.

10        Do you understand that?

11        DEFENDANT F. ROJAS:  Yes.

12        DEFENDANT MARTINEZ-ROJAS:  Yes.

13        THE COURT:  All right.  Each of you understand

14   that.

15        THE COURT:  And even though I am talking about

16   the sentencing guidelines which we're going over and how

17   the judge has some discretion, for each of you, it's

18   proposed that you're going to plead guilty to counts that

19   include a minimum term of imprisonment of fifteen years.

20        Do you understand that?

21        DEFENDANT F. ROJAS:  Yes.

22        DEFENDANT MARTINEZ-ROJAS:  Yes.

23        THE COURT:  All right.  So despite the

24   uncertainty as to exactly what the guidelines will be

25   when you get to your sentencing date, I am going to ask

67

Proceedings

1    the attorneys, first the government and then you're

2    respective attorneys to give their best estimate as to

3    what the sentencing guidelines are likely to say.

4            You should note that these estimates are based

5    on the facts available to the lawyers at this time.  So

6    this is their best estimate but they could be wrong.

7            Do you understand?  This is just their best

8    estimate.

9            DEFENDANT F. ROJAS:  Yes.

10           DEFENDANT MARTINEZ-ROJAS:  Yes.

11           THE COURT:  All right.  Let's do Mr. Rojas

12   first.

13           For the government, do you want to --

14           MS. MERKL:  So starting with Mr. Felix Rojas,

15   your Honor, the government's estimate as set forth in the

16   plea agreement is that the guidelines will be

17   approximately 324 to 405 months, assuming that the

18   defendant falls within criminal history category one.

19           I would note that that estimate is based on the

20   global disposition of the case, which the government does

21   anticipate is going to happen.  We have all the

22   defendants in this case scheduled to plead by Thursday of

23   this week.

24           So taking into consideration the two level

25   reduction for a global disposition, the overall adjusted

68

Proceedings

1   offense level that we estimate at this time is 324 to 405

2   months.

3           THE COURT:  Okay.  So just so the record is

4   clear, paragraph 10 asks that or requires rather that all

5   of the defendants plead before April 19th but given

6   everyone's schedule, including the Court's, that Thursday

7   is actually the 20th.  Is that going to be an issue?

8           MS. MERKL:  No, your Honor.

9           THE COURT:  Okay.  All right.

10          So, Ms. Newman, with regard to the sentencing

11  guidelines as they apply to your client, what's your

12  estimate?

13          MS. NEWMAN:  Thank you, your Honor.  We

14  disagree with many of the enhancements that are contained

15  in the government's estimation and as a result, our

16  estimation is much lower.  However, for these

17  proceedings, so that my client is fully aware, that these

18  could come to fruition, that the probation department and

19  the Court could find the government's estimation correct.

20  Rather than go through the various groupings, we simply

21  say that we -- I have advised my client of the

22  government's estimations, carefully reviewed with him the

23  guidelines, our disagreements, the arguments we would

24  make on his behalf with respect to the various

25  enhancements.

69

Proceedings

1          And so he is aware of where we are going and

2    whether it will succeed or not and that it is up to the

3    Court ultimately to calculate the guidelines accurately.

4          THE COURT:  All right.  Mr. Rojas, did you

5    understand what the government said with regard to the

6    estimate they have for the sentencing guidelines?

7          DEFENDANT F. ROJAS:  Yes.  Yes, I understood.

8          THE COURT:  All right.  And do you understand

9    that your attorney is offering a different view of what

10   the guidelines may be in your case?

11         DEFENDANT F. ROJAS:  Yes.

12         THE COURT:  And do you understand that any

13   disagreement as between the attorneys will not be decided

14   until the judge, Judge Korman, makes a decision as to

15   what the guidelines are for your case and decides what

16   your sentence is going to be.

17         Do you understand that?

18         DEFENDANT F. ROJAS:  Yes, I understand.

19         THE COURT:  All right.  And I know I keep going

20   back to this but it's a very important point.  Despite

21   the fact that we're talking about the guidelines, do you

22   understand that there's a mandatory minimum sentence of

23   15 years?

24         DEFENDANT F. ROJAS:  Yes, I understand.

25         THE COURT:  All right.  Let's go over Mr.

70

Proceedings

1  Martinez-Rojas, with regard to the sentencing guidelines.

2  So for the government, these are outlined in his plea

3  agreement, correct?

4          MS. MERKL:  Correct, your Honor.  The

5  government's current estimate of the guidelines is set

6  forth in pages 5, 6 and 7 of the plea agreement for Mr.

7  Severiano Martinez-Rojas and based on the totality of the

8  facts as we understand them right now, we estimate a

9  total adjusted offense level of 38, which carries a range

10 of imprisonment of 235 to 293 months, assuming that the

11 defendant falls within criminal history category one.

12         As with Mr. Rojas, Mr. Martinez-Rojas' estimate

13 is based on a two level reduction for the global

14 disposition and as I noted previously, we do expect that

15 to come to fruition because all of the defendants are

16 currently scheduled to plead guilty by this Thursday.

17         THE COURT:  All right.  And just so the record

18 is clear, I believe this agreement also includes the

19 April 19th date, correct?

20         MS. MERKL:  Correct.

21         THE COURT:  All right.  And as things are

22 scheduled now, these pleas will be completed by the 20th.

23 Is that going to be an issue?

24         MS. MERKL:  No, your Honor.

25         THE COURT:  Okay.  All right.  Mr. Wallenstein,

71

Proceedings

1   your estimate with regard to the sentencing guidelines as

2   they apply to Mr. Martinez-Rojas?

3           MR. WALLENSTEIN:  Well, your Honor, as Ms.

4   Newman said, we disagree with a number of the

5   enhancements.  However, we do recognize that the

6   government's estimate is what it is and I certainly

7   acknowledge that we have agreed in the plea agreement

8   that that is the government's estimate and there is, of

9   course, an appellate waiver which more than encompasses

10  the government's estimate of the guidelines and my client

11  also recognizes that there are mandatory minimum terms

12  here.

13          THE COURT:  Okay.  Just to note for the record,

14  we changed Spanish interpreters again.  Can you just

15  state your name?

16          THE INTERPRETER:  Rosa Olivera.

17          THE COURT:  All right.  Welcome back.

18          All right.  So, Mr. Martinez-Rojas, did you

19  understand what the government's attorney said with

20  regard to the estimate they have for the sentencing

21  guidelines?

22          DEFENDANT MARTINEZ-ROJAS:  Yes.

23          THE COURT:  All right.  And do you understand

24  what your attorney said which is in sum, that he had some

25  disagreements with the government's position.

Proceedings

1          DEFENDANT MARTINEZ-ROJAS:  Yes.

2          THE COURT:  All right.  And do you understand

3   that until the date of sentencing, when the judge has

4   reviewed all of these materials and heard from everyone,

5   you can't know what the sentencing guidelines will be for

6   your case or what your sentence will be?

7          DEFENDANT MARTINEZ-ROJAS:  Yes, I understand.

8          THE COURT:  All right.  And despite that

9   uncertainty, do you want to go ahead with your proposed

10  guilty plea?

11         DEFENDANT MARTINEZ-ROJAS:  Yes.

12         THE COURT:  And as I said to your co-defendant,

13  Mr. Rojas, is that we're talking about the discretion

14  that the judge has with regard to the sentencing

15  guidelines and the sentencing process two of the counts

16  to which it's proposed that you're going to plead guilty,

17  Count 19 of the Eastern District of New York indictment

18  and Count 1 of the Northern District of Georgia

19  indictment, each contains a minimum term of imprisonment

20  of 15 years.

21              Do you understand that?

22         DEFENDANT MARTINEZ-ROJAS:  Yes.

23         THE COURT:  And it's also possible that the

24  sentence imposed may run consecutively.

25              Do you understand that?

73

Proceedings

1          DEFENDANT MARTINEZ-ROJAS:  Yes.

2          THE COURT:  All right.  So for each of the

3   defendants, do you understand that if the government's

4   estimates or your attorney's estimates are wrong, you

5   will not be permitted to withdraw your plea of guilty

6   because of those errors?  All right.  Mr. --

7          DEFENDANT F. ROJAS:  Yes, of course.

8          DEFENDANT MARTINEZ-ROJAS:  Yes, I understand.

9          THE COURT:  Okay.  And that's the same actually

10  that's -- these questions now are for each of the

11  defendants.  So, Mr. Rojas, do you also understand that

12  even if the lawyers estimates are wrong, you would not be

13  permitted to withdraw your plea of guilty on that basis?

14         DEFENDANT F. ROJAS:  Yes, I understand.

15         THE COURT:  All right.  For each of the

16  defendants, do you understand that your ultimate sentence

17  could turn out to be different from any estimate -- any

18  of these attorneys, the government, or your respective

19  attorneys have given you?  All right.  Mr. Rojas, do you

20  understand?

21         DEFENDANT F. ROJAS:  Yes, I understand.

22         THE COURT:  And Mr. Martinez-Rojas?

23         DEFENDANT MARTINEZ-ROJAS:  Yes.

24         THE COURT:  So it could turn out that because

25  of other statutory sentencing factors, Judge Korman

74

Proceedings

1  decides to impose a sentence even higher than the one

2  called for by the advisory sentencing guidelines.  If

3  that turns out to be the case, you would not be permitted

4  to withdraw your guilty plea simply because no one could

5  tell you in advance what your sentence should be.

6          Do you understand that?

7          DEFENDANT F. ROJAS:  Yes, I understand.

8          DEFENDANT MARTINEZ-ROJAS:  Yes, I understand.

9          THE COURT:  All right.  So for each of you,

10  we've gone over your respective plea agreements in some

11  detail and focused and discussed some paragraphs in more

12  detail than others but I am going to ask you about the

13  entire agreement.  Does each of you fully understand your

14  respective plea agreement with the government?

15          DEFENDANT F. ROJAS:  Yes.

16          DEFENDANT MARTINEZ-ROJAS:  Yes.

17          THE COURT:  All right.  And did each of you

18  have an adequate opportunity to review the plea agreement

19  with your attorney?

20          DEFENDANT F. ROJAS:  Yes.

21          DEFENDANT MARTINEZ-ROJAS:  Yes.

22          THE COURT:  All right.  And for each of you,

23  those agreements were translated into Spanish, correct?

24          DEFENDANT F. ROJAS:  Yes.

25          DEFENDANT MARTINEZ-ROJAS:  Yes.

75
                          Proceedings

1            THE COURT:  All right.  And so for each of you,

2    do you wish to go ahead with the plea agreement that you

3    have with the government?  Mr. Rojas?

4            DEFENDANT F. ROJAS:  Yes.

5            THE COURT:  All right.  Mr. Martinez-Rojas?

6            DEFENDANT MARTINEZ-ROJAS:  Yes.

7            THE COURT:  All right.  So for each of you, I

8    am going to tell you a small point about your rights, if

9    you have these rights in the United States at all.

10   What's being proposed is that you're pleading guilty to a

11   felony or felonies and if your plea is accepted and

12   you're adjudged guilty of those felonies, that

13   adjudication could result in the deprivation of certain

14   civil rights.

15           Some of those civil rights are only available

16   to citizens which is my understanding, that you're not

17   citizens of the United States but I want you to

18   understand to the extent you do have certain rights in

19   the United States, being adjudicated guilty of a felony

20   may result in a limitation on those rights.

21           Do you understand?

22           DEFENDANT F. ROJAS:  Yes, I understand.

23           DEFENDANT MARTINEZ-ROJAS:  Yes, I understand.

24           THE COURT:  All right.  So I have gone over

25   many of the possible consequences to you if your plea of

76

Proceedings

1   guilty is accepted.

2          Does each of you understand the possible

3   consequences that I have gone over?

4          DEFENDANT F. ROJAS:  Yes.

5          DEFENDANT MARTINEZ-ROJAS:  Yes.

6          THE COURT:  All right.  And have you reviewed

7   all of these possible consequences with your respective

8   attorneys?  Mr. Rojas?

9          DEFENDANT F. ROJAS:  Yes.

10         DEFENDANT MARTINEZ-ROJAS:  Yes.

11         THE COURT:  All right.  Mr. Martinez-Rojas?

12         DEFENDANT MARTINEZ-ROJAS:  Yes.

13         THE COURT:  All right.  And did you have a

14  sufficient opportunity to consult with your attorney

15  about them?

16         DEFENDANT F. ROJAS:  Yes.

17         DEFENDANT MARTINEZ-ROJAS:  Yes.

18         THE COURT:  All right.  I am going to switch my

19  questions to the government's attorneys.  It's up to you

20  if you want to tell me about your answers to the

21  questions as to each case or together.  So is the

22  government -- let me ask it a little differently.

23         The elements of each of the claimed -- or

24  charges to which the defendants are proposed to plead

25  guilty are set forth in the submission that you have

Proceedings

1  statutes and essential elements.

2          MS. LEE:  Yes, your Honor.

3          THE COURT:  Okay.  And for each defendant is

4  the government prepared to prove at trial all of the

5  elements of each of the counts against the defendant?

6          MS. MERKL:  Yes, your Honor.

7          THE COURT:  All right.  I am going to ask you

8  what is the evidence the government would offer at trial?

9  Do you want to answer that together, as least on the EDNY

10  indictment or do you want to do it separately?

11         MS. LEE:  I could answer it together including

12  the Georgia indictment.

13         THE COURT:  Georgia, okay.

14         MS. LEE:  And I just note actually for the

15  record that while we've been sitting here, the Georgia

16  case was officially transferred on ECF.

17         THE COURT:  Okay.

18         MS. LEE:  And it now has an EDNY docket number,

19  and that's 17-cr-208.

20         And with respect to all of the charges set

21  forth in the plea agreement, the government would prove

22  at trial through witness testimony, including the victims

23  that are set forth in the indictment, and border crossing

24  records, wire transfer records, wiretap evidence, as well

25  as other documentary evidence, that in or about and

78

Proceedings

1   between December 2004 and November 2015, in Queens, New

2   York, the Rendon-Reyes trafficking organization was a

3   criminal organization that operated in Queens, Atlant,

4   Jefferson, Alabama, Mexico and other locations throughout

5   the United States and that members and associates of the

6   Rendon-Reyes trafficking organization were engaged in

7   various forms of criminal activity, including but not

8   limited to sex trafficking of women and minor girls,

9   prostitution, alien smuggling, alien harboring, and money

10  laundering.  That the enterprise trafficked women from

11  Mexico into the United States and throughout the country,

12  for the purpose of prostitution for their financial gain.

13        And then each of these defendants conducted or

14  participated in the conduct of this organization.  With

15  respect to Mr. Martinez-Rojas, he engaged in the sex

16  trafficking of Jane Does 1, 3, 6, 7, 9, as well as the

17  victim in the Georgia indictment, FBF.  Those individuals

18  through fraud, force and coercion were brought into the

19  United States for the purposes of prostitution, as well

20  as the victims, MSJ, and SAM, which are also set forth in

21  the Georgia indictment.

22        With respect to Mr. Felix Rojas, as

23  Racketeering Acts and also as set forth in the counts

24  including the substantive Count 17 that he is pleading

25  guilty to, he through force, fraud and coercion, caused

79
Proceedings

1  both the Jane Does 6, and 9 to be brought from Mexico

2  into the United States for the purpose of the

3  prostitution.

4          THE COURT:  Okay.

5          MS. LEE:  Oh, sorry, 6 and 8.

6          THE COURT:  6 and 8, right.  So, 6 is in

7  Racketeering Act 8(a), Count 17 and 8 is in Racketeering

8  Act 10(a) and Count 21, is that correct?

9          MS. MERKL:  That's correct.  Thank you.

10         THE COURT:  All right.  So Ms. Newman, with

11 regard to Mr. Rojas, do you agree the government would be

12 able to prove his defense -- sorry, the government be

13 able to prove his guilt at trial based on the evidence

14 just described by the government?

15         MS. NEWMAN:  Yes, based on the evidence that

16 was provided to us in discovery.  Yes.

17         THE COURT:  So that's the same as generally

18 what the government just described?

19         MS. NEWMAN:  Yes.

20         THE COURT:  Okay.  Do you know of any reason

21 why Mr. Rojas should not plead guilty?

22         MS. NEWMAN:  No, I do not.

23         THE COURT:  Are you aware of any viable legal

24 defense to the charges?

25         MS. NEWMAN:  No, I do not.

Proceedings

1      THE COURT:  Okay.  All right.  In your opinion,

2  is this proposed plea in your client's best interest?

3      MS. NEWMAN:  Yes, it is.

4      THE COURT:  Okay.  All right.  Mr. Wallenstein,

5  with regard to Mr. Martinez-Rojas, do you agree the

6  government would be able to prove his guilt at trial

7  based on the evidence described by the government?

8      MR. WALLENSTEIN:  Yes, your Honor.  Based on

9  Ms. Lee's description today and based upon the discovery

10 that I have received and reviewed and reviewed with my

11 client.

12     THE COURT:  Okay. And do you know of any reason

13 why Mr. Martinez-Rojas should not plead guilty?

14     MR. WALLENSTEIN:  No, your Honor.

15     THE COURT:  Are you aware of any viable legal

16 defense to the charges?

17     MR. WALLENSTEIN:  No, your Honor.

18     THE COURT:  And in your opinion, is this plea

19 in your client's best interest?

20     MR. WALLENSTEIN:  Yes, it is.

21     THE COURT:  All right.  So for each of the

22 defendants, as I said earlier, I am going to ask you how

23 you plea and it's up to you to let me know if you want to

24 plead guilty or not guilty but if you plead guilty, I am

25 going to ask you what it is that you did such that you

Proceedings

1  are, in fact, guilty of the charges to which you're

2  pleading guilty.

3      All right.  So for each of the defendants, do

4  you need an opportunity to speak with your attorney at

5  this time?

6      DEFENDANT F. ROJAS:  No.

7      DEFENDANT MARTINEZ-ROJAS:  No.

8      THE COURT:  All right.  So for each of the

9  defendants, are you ready to plead?

10      DEFENDANT F. ROJAS:  Yes.

11      DEFENDANT MARTINEZ-ROJAS:  Yes.

12      THE COURT:  All right.  We're going to start

13  with Mr. Felix Rojas.  So with regard to Count 1 of the

14  indictment, how do you plead, guilty or not guilty?

15      DEFENDANT F. ROJAS:  Yes.

16      THE COURT:  No, you have to pick.  It's either

17  guilty or not guilty, which do you pick?

18      DEFENDANT F. ROJAS:  Guilty.

19      THE COURT:  All right.  So is it correct you

20  plead guilty to Count 1 of the indictment?

21      DEFENDANT F. ROJAS:  Yes.

22      THE COURT:  All right.  With regard to Count 17

23  of the superseding indictment, how do you plead, guilty

24  or not guilty?

25      DEFENDANT F. ROJAS:  Guilty.

Proceedings

1        THE COURT:  All right.  So as I said, you're

2   going to have to tell me what it is that you did such

3   that you are, in fact, guilty of those two counts.

4        DEFENDANT F. ROJAS:  Between 2008 and 2012, I

5   was a party to a business, a family business in Mexico

6   which brought women through the border with Mexico to the

7   United States with the purpose of making them prostitutes

8   -- for the purpose of prostituting them.  The business

9   made money making off of the prostitution of the women in

10   the United States because they paid a percentage of the

11   monies they earned -- the money they earned in their

12   illegal activity.

13        The women who worked for us worked as

14   prostitutes in the United States, including Queens in New

15   York.  I helped in surreptitiously bringing Jane Doe 6

16   and 8 through the border between the two countries for

17   the purpose of prostituting them.

18        In order to convince these women to work as

19   prostitutes in the United States, myself and other people

20   made them false promises.  I helped to manage, to

21   supervise prostitution in the United States and I

22   received part of the monies that were earned through

23   prostitution.

24        I knew that it was illegal to help transport

25   the women -- to transport the alien women to the United

83

Proceedings

1    States and I knew that prostitution was illegal in the

2    United States.

3              THE COURT:  All right.  When you said the

4    "family business," that's the Rendon-Reyes family?

5              DEFENDANT F. ROJAS:  Yes.

6              THE COURT:  All right.  Ms. Newman, is there

7    anything else you would like your client to add to that

8    allocution?

9              MS. NEWMAN:  No, your Honor.

10             THE COURT:  For the government, was that a

11   satisfactory allocution?

12             MS. MERKL:  Yes, your Honor.

13             THE COURT:  All right.  Let me ask you a few

14   questions, Mr. Rojas.

15             Are you pleading guilty to Count 1 and Count 17

16   of the supervised release voluntarily and of your own

17   free will?

18             DEFENDANT F. ROJAS:  Yes.

19             THE COURT:  Has anyone threatened or forced you

20   to plead guilty?

21             DEFENDANT F. ROJAS:  No.

22             THE COURT:  Other than the promises that are

23   contained in the written agreement, which is marked as

24   Court Exhibit 4 that you entered into with the

25   government, has anyone made any other promises to you to

Proceedings

1    induce you to plead guilty?

2              DEFENDANT F. ROJAS:  No.

3              THE COURT:  Has anyone made any promises to you

4    as to what your final sentence will be?

5              DEFENDANT F. ROJAS:  No.

6              THE COURT:  Are you pleading guilty of your own

7    free will because you are, in fact, guilty of Count 1 and

8    Count 17 of the superseding indictment?

9              DEFENDANT F. ROJAS:  Yes.

10             THE COURT:  Okay.  All right.  Mr. Martinez-

11   Rojas, are you ready to plead?

12             DEFENDANT F. ROJAS:  Yes.

13             THE COURT:  All right.  First with regard to

14   Count 1 of the Eastern District of New York indictment,

15   how do you plead guilty or not guilty?

16             DEFENDANT MARTINEZ-ROJAS:  I am guilty.

17             THE COURT:  Okay.  With regard to Count 19 of

18   the Eastern District of New York indictment, how do you

19   plead, guilty or not guilty?

20             DEFENDANT MARTINEZ-ROJAS:  Guilty.

21             THE COURT:  All right.  And with regard to

22   Count 1 of the charge in the indictment from the Northern

23   District of Georgia which was known as case number 13-cr-

24   128 and now has an Eastern District of New York number,

25   17-cr-208, how do you plead, guilty or not guilty?

85

Proceedings

1          DEFENDANT MARTINEZ-ROJAS:  Guilty.

2          THE COURT:  All right.  So as I said earlier, I

3     am going to ask you what it is that you did such that you

4     are, in fact, guilty of Counts 1 and 19 of the Eastern

5     District of New York indictment and Count 1 of the

6     Northern District of Georgia indictment.

7          DEFENDANT MARTINEZ-ROJAS:  Between December of

8     2004 and November of 2015, along with other members of my

9     family, I participated in bringing a girl and women from

10    Mexico to the United States.

11         Once in the United States, Georgia, New York

12    and other places, these girls worked as prostitutes.  My

13    co-defendants and I benefitted from their activities

14    because we took the money that the women earned through

15    prostitution.

16         As part of the family business, the business

17    with my family, and I participated in the prostitution of

18    women, T-H-E J-A-N-E D-O-E 1, 3 --

19         THE COURT:  I'm sorry, say it one more time?

20         DEFENDANT MARTINEZ-ROJAS:  -- 6 and 7.

21         THE COURT:  Can you say those names -- hang on.

22    Hold on.

23         DEFENDANT MARTINEZ-ROJAS:  -- and 9 in New

24    York.

25         THE COURT:  Sorry, say the identifying names

86

Proceedings

1  again?

2          MR. WALLENSTEIN:  It was Jane Doe and numbers,

3  Judge.

4          THE COURT:  I just want the record to be clear.

5  I couldn't understand it.

6          MS. MERKL:  He spelled it out, your Honor.

7          DEFENDANT MARTINEZ-ROJAS:  As part of the

8  family business and I participated in the trafficking of

9  women in Jane D-O-E, 3 -- I mean, 1, 3, 6, 7, and 9 in

10  New York.

11          THE COURT:  Okay.  Thank you.  Continue.

12          DEFENDANT MARTINEZ-ROJAS:  In Georgia, I

13  participated in the trafficking of M-S-G -- J, and S-M-A.

14          THE COURT:  S-A-M or S-M-A?

15          MR. WALLENSTEIN:  S-A.

16          DEFENDANT MARTINEZ-ROJAS:  S-M-A.

17          MR. WALLENSTEIN:  No.

18          THE COURT:  Do you want to take a look at the

19  indictment?

20          DEFENDANT MARTINEZ-ROJAS:  S-A-M.

21          THE COURT:  Okay.  Continue.

22          DEFENDANT MARTINEZ-ROJAS:  I was able to do

23  this because I made false promises in order to get them

24  to become prostitutes.

25          THE COURT:  All right.  And again, the family

87

                    Proceedings
 1  enterprise is the Rendon-Reyes family, is that correct?

 2          DEFENDANT MARTINEZ-ROJAS:  Yes.

 3          THE COURT:  All right.  Mr. Wallenstein, would

 4  you like your client to add anything else to the record

 5  with regard to his allocution?

 6          MR. WALLENSTEIN:  No, your Honor, I believe

 7  that's sufficient.

 8          THE COURT:  All right.  For the government, is

 9  that a sufficient allocution?

10          MS. MERKL:  Your Honor, I believe that one

11  victim was not included and that's the subject of Count 1

12  of the Georgia indictment which is FBF.

13          THE COURT:  Hang on one second.  The plea

14  agreement?

15          MS. MERKL:  Your Honor, the plea agreement

16  states that he plans to plead guilty to Count 1 and admit

17  his participation in the trafficking of the others who he

18  is not pleading guilty to.

19          THE COURT:  Okay.

20          MS. MERKL:  So to the extent that we failed to

21  include FBF specifically by her initials in that

22  recitation does not -- that's not the end all, be all of

23  what he is pleading guilty to.  He's supposed to be

24  pleading guilty to Count 1 which is the trafficking of

25  FBF.

88

Proceedings

1           THE COURT:  Okay.

2           MS. MERKL:  And she is specified on page 6 of

3  the plea agreement by initials.

4           THE COURT:  The middle of the page?

5           MS. MERKL:  Correct.

6           DEFENDANT MARTINEZ-ROJAS:  Yes.

7           THE COURT:  All right.  Mr. Wallenstein, any

8  issue?

9           MR. WALLENSTEIN:  No, your Honor.  I think it's

10  my error when I wrote out the allocution --

11           THE COURT:  Okay.

12           MR. WALLENSTEIN:  I eliminated that

13  accidentally.  So I have no problem with the amendment

14  and not since my client just admitted it, we have

15  everything we need.

16           THE COURT:  Okay.  Let me just confirm that.

17  Okay.  So was one -- this is for Mr. Martinez-Rojas, was

18  one of the women trafficked a woman noted in Count 1 of

19  the Georgia indictment as FBF?

20           DEFENDANT MARTINEZ-ROJAS:  Yes.

21           THE COURT:  And also you mentioned Jane Doe 3,

22  was she a minor?

23           DEFENDANT MARTINEZ-ROJAS:  Yes.

24           THE COURT:  Okay.  All right. Anything else for

25  the government or was that a sufficient allocution?

89

Proceedings

1           MS. MERKL:  That's sufficient.  Thank you, your

2    Honor.

3           THE COURT:  All right.  Let me ask you a few

4    questions, Mr. Martinez-Rojas.  Are you pleading guilty

5    voluntarily and of your own free will to Counts 1 and 19

6    of the Eastern District of New York indictment and Count

7    1 of the Northern District of Georgia indictment?

8           DEFENDANT MARTINEZ-ROJAS:  Yes.

9           THE COURT:  Has anyone threatened or forced you

10   to plead guilty?

11          DEFENDANT MARTINEZ-ROJAS:  No.

12          THE COURT:  Other than the promises contained

13   in the written agreement which is Government's Exhibit 5

14   that you have entered into with the government, has

15   anyone made any other promises to you to induce you to

16   plead guilty?

17          DEFENDANT MARTINEZ-ROJAS:  No.

18          THE COURT:  Has anyone made any promise to you

19   as to what your final sentence will be?

20          DEFENDANT MARTINEZ-ROJAS:  No.

21          THE COURT:  Are you pleading guilty of your own

22   free will because you are, in fact, guilty?

23          DEFENDANT MARTINEZ-ROJAS:  Yes.

24          THE COURT:  All right.  I am not sure if I

25   asked this question for Mr. Rojas.  Has anyone made any

90

Proceedings

1   promise to you as to what your final sentence will be?

2           DEFENDANT F. ROJAS:  No.

3           THE COURT:  Okay.  So as to each of the

4   defendants, I am going to make the recommendation.  So

5   with regard to Mr. Felix Rojas, based on the information

6   given to me, I find that Mr. Felix Rojas is fully

7   competent, that he is capable of entering an informed

8   plea.  That he is acting voluntarily, that he is aware of

9   the nature of the charges against him, that he

10  understands his rights, that he understands the

11  consequences of his plea and that there's a factual basis

12  for the plea supported by an independent basis in fact as

13  to each of the essential elements of the offenses for

14  Count 1 and Count 17 of the superseding indictment in the

15  New York case.

16          So, I therefore recommend that the district

17  judge, Judge Korman, accept Mr. Felix Rojas' plea of

18  guilty to Counts 1 and Counts 17 of the indictment.

19          So with regard to Mr. Martinez-Rojas, based

20  again on the information given to me, I find that Mr.

21  Martinez-Rojas is fully competent, that he is capable of

22  entering an informed plea.  That he is acting

23  voluntarily, that Mr. Martinez-Rojas is aware of the

24  nature of the charges against him, that he understands

25  his rights, that he understands the consequences of his

Proceedings

1   guilty plea and that there's a factual basis for the plea

2   supported by an independent basis in fact as to each of

3   the essential elements of the offenses.

4            So, I therefore recommend that the district

5   judge, Judge Korman, accept Mr. Martinez-Rojas' plea of

6   guilty to Counts 1 and Counts 19 of the Eastern District

7   of New York indictment, as well as to Count 1 of the

8   Northern District of Georgia indictment.

9            All right.  So we don't have a sentencing date

10  yet but as I mentioned, a presentence report will be

11  prepared as to each defendant.  So let me ask, Ms.

12  Newman, would you like to be part of that interview

13  process with probation?

14           MS. NEWMAN:  Yes, I would thank you.

15           THE COURT:  All right.  We'll let probation

16  know.

17           And then Mr. Wallenstein, with regard to your

18  client would you like to be part of that process?

19           MR. WALLENSTEIN:  I will absolutely be there.

20           THE COURT:  All right.  So we'll let probation

21  know that.

22           I assume your clients are going to continue in

23  custody, is that correct?

24           MS. NEWMAN:  That is correct.

25           THE COURT:  Are there any medical issues that

Proceedings

1    need attention?

2            MS. NEWMAN:  Not that I know of, no.  And I've

3    asked him each time I have met with him, so no.

4            THE COURT:  All right.  So for Mr. Martinez-

5    Rojas, any medical issues?

6            MR. WALLENSTEIN:  No, your Honor.

7            THE COURT:  All right.  I'm going to return to

8    the government, Government's Exhibits 4 and 5 which are

9    the original plea agreements.

10            Anything else that we need on the record here?

11            MR. WALLENSTEIN:  Judge, just one thing, since

12   I expect it will be several months until we actually get

13   to sentencing, would you authorize us to obtain the

14   transcript of today's proceedings?

15            THE COURT:  Yes.

16            MR. WALLENSTEIN:  I know it has to be done

17   through e-voucher but I think we need your authorization

18   first.

19            THE COURT:  We order it.  It will be on the

20   docket, yes.

21            THE CLERK:  ECF.

22            THE COURT:  Yes.

23            MR. WALLENSTEIN:  I understand that but we

24   can't get it off the docket until several months down the

25   road.  We can order it through e-voucher initially once

93

Proceedings

1   it's ordered, but we need the Court's authorization.

2           THE COURT:  I don't usually get those requests.

3   Do you usually make it to the magistrate judge or do you

4   do it to the district judge?

5           MR. WALLENSTEIN:  I make it to anybody who has

6   got the power to get me the transcript.

7           THE COURT:  Yes.

8           MR. WALLENSTEIN:  If you want, I'll write to

9   Judge --

10          THE COURT:  No, no, you need the transcript.

11  So we're going to order it.  Once it's available, then

12  you can --

13          MR. WALLENSTEIN:  And then I think it's --

14          THE COURT:  -- get a copy.

15          MR. WALLENSTEIN:  -- not a problem.  Once the

16  Court orders it, I think they'll automatically get us

17  copies anyway.

18          THE COURT:  Okay.  We'll order it right after

19  this.

20          Other issues?

21          MR. WALLENSTEIN:  That's it.

22          THE COURT:  No.  All right.  I am just going to

23  -- for the government, we have the rest of them -- the

24  others lined up, as you mentioned?

25          MS. MERKL:  Yes, on Thursday, your Honor.  I

94

Proceedings

1   believe we have a defendant at 1 o'clock, 2 o'clock and 3

2   o'clock.

3           THE COURT:  All right.  I would ask if you

4   consider whether any of those could happen at the same

5   time.  You don't need to give me an answer now but

6   obviously no matter how hard I try, it still takes a long

7   time to go through with the translator and the size of

8   this case.

9           So if any of those folks can be done at the

10  same time, if it can be, if you can let my deputy know,

11  then obviously the marshals in terms of the production.

12  If it can't we'll just, you know, go through it.

13          MS. MERKL:  We'll look at that, Judge, and also

14  determine whether defense counsel's schedules permit

15  that.

16          THE COURT:  Okay.

17          MS. MERKL:  Thank you.

18          THE COURT:  All right.  Thanks everyone.  Take

19  care.

20          MR. WALLENSTEIN:  Thanks, Judge.

21              (Matter concluded)

22                  -o0o-

23

24

25

Transcriptions Plus II, Inc.

95

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **29th** day of **May**, 2017.

*Linda Ferrara*
Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.